MERRITT, Circuit Judge.
 

 This case raises complex issues concerning the jurisdiction of the district and bankruptcy courts and the appropriate procedures to be followed in bankruptcy matters in light of
 
 Northern Pipeline Construction
 
 
 *255
 

 Co. v. Marathon Pipe Line Co.,
 
 - U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (invalidating the delegation of Article III judicial power to bankruptcy courts contained in section 241(a) of the 1978 Bankruptcy Reform Act). The holding of
 
 Northern Pipeline
 
 was to be applied prospectively only, and it became effective on December 24, 1982, after the Court’s stay expired.
 

 First, we must consider what the Supreme Court intended respecting the jurisdiction of the district and bankruptcy courts when it commanded that
 
 Northern Pipeline
 
 be applied prospectively only. Do bankruptcy courts have jurisdiction after December 24, 1982, to continue to hear cases which were commenced prior to that date? What limits, if any, does
 
 Northern Pipeline
 
 place on the powers of district and bankruptcy courts and what is the hierarchical relationship between the courts? In light of the answers to these questions, we must determine whether an order appointing a special master to adjudicate products liability claims in this Chapter 11 case should be reinstated.
 

 I. INTRODUCTION
 

 White Motor Corporation, a large truck manufacturer, filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code on September 4, 1980. It is a large and complex reorganization case. Included among the many claims against the White Motor estate are approximately 160 separate, unliquidated and contingent product liability claims.
 

 Early in the proceedings the debtor devised a program to facilitate the disposition of these pending products liability cases through the appointment of a special master. The Bankruptcy Court agreed with the debtor that a successful reorganization depended upon prompt resolution of these cases and appointed a special master on April 22, 1981, to conduct evidentiary hearings and ultimately to submit recommendations as to the disposition of the cases to the Bankruptcy Court.
 

 The appellees, Citibank and other bank creditors of White Motor (“the Bank Creditors”), filed an appeal in the District Court on May 1,1981. Judge Aldrich vacated the Order appointing the Special Master on September 20, 1982. She found that the Bankruptcy Court had no jurisdiction to hear cases after December 24, 1982, in light of the Supreme Court’s ruling in
 
 Northern Pipeline, supra.
 
 In
 
 Northern Pipeline,
 
 a Chapter 11 debtor as plaintiff brought a non-bankruptcy products liability case in the bankruptcy court under the provisions of the new Act. Holding that the jurisdictional section of the new Act confers Article III jurisdiction on non-Article III bankruptcy courts in such cases, the Supreme Court concluded that it must invalidate the jurisdictional section, § 1471(c). The Court held unconstitutional 28 U.S.C. § 1471(c) conferring direct, nonderivative, bankruptcy jurisdiction on bankruptcy courts.
 
 [1]
 

 Since the special master would clearly be unable to complete the 160 products liability suits by December 24, 1982, when the stay of the
 
 Northern Pipeline
 
 decision would expire, the District Court ruled that the appointment of a master to do what the Bankruptcy Court could not do was invalid.
 

 A. White Motor’s Contentions
 

 White Motor challenges the District Court’s ruling, 23 B.R. 276, on several grounds, and the Bank creditors find fault with much of the reasoning employed by the District Court. First, the debtor argues that the appointment order should stand because the Supreme Court specified that
 
 *256
 
 its decision in
 
 Northern Pipeline
 
 should be applied prospectively only. The plurality opinion states that it is “plain that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act’s vesting of jurisdiction in the bankruptcy courts.”
 
 Northern Pipeline, supra,
 
 102 S.Ct. at 2880. The concurring justices agree that the decision should not be applied retroactively.
 
 Id.
 
 102 S.Ct. at 2882. White Motor interprets this holding to mean that any action, including actions establishing procedures for future adjudication of cases, taken by a Bankruptcy Court prior to the lifting of the stay, should be given full effect. In other words, the appointment order giving the special master adjudication authority should be upheld despite the fact that the special master would be trying the cases after December 24,1982, because the authority itself was granted prior to the
 
 Northern Pipeline
 
 decision.
 

 In the alternative, the debtor contends that the
 
 Northern Pipeline
 
 ruling does not affect the jurisdiction of Article III judges of the District Court as granted in 28 U.S.C. §§ 1471(a) and (b) or, alternatively, in 28 U.S.C. § 1334.
 
 [2]
 
 Their argument here is that the District Court, after the decision in
 
 Northern Pipeline,
 
 made a constitutionally valid general referral of cases, including the White Motor case, to the Bankruptcy Court. This referral was done under the authority of an “interim rule” adopted by the district court in the Northern District of Ohio, as outlined below.
 

 Shortly after the
 
 Northern Pipeline
 
 decision was rendered, the Judicial Conference of the United States requested that William E. Foley, Director of the Administrative Office of the United States Courts, draft an interim rule to be recommended for adoption by the District Courts, a rule which would provide for the continuing operation of the bankruptcy system should Congress fail to act within the stay period. Judicial Conference Resolution (Sept. 23, 1982). This measure was taken to prevent the possible breakdown of existing institutional arrangements for debt collection and debtor protection nationwide.
 

 Mr. Foley submitted a proposed rule to the Conference, which then circulated it to all of the bankruptcy, district and appeals court judges. Each of the eleven Judicial Councils of the Circuits ordered the district courts to adopt the interim rule with only minor modifications. In particular, the Judicial Council of the Sixth Circuit ordered on December 21, 1982, that each district court adopt the rule which would become effective as of the lifting of the stay on December 24, 1982. The district courts in this Circuit have all adopted the rule proposed by the Administrative Office without any modifications.
 

 The interim rule essentially contains the institutional pattern for handling bankruptcy matters as it was under the Chandler Act (act of June 22, 1938, ch. 575, 52 Stat. 840, 75th Cong., 3d Sess.) The rule basically revives the old system under which federal district courts referred bankruptcy cases to the bankruptcy courts or referees. The rule provides for the initial adjudication of bankruptcy matters primarily in the bankruptcy courts, with significant involvement by the district courts. The rule provides for the automatic initial referral to the bankruptcy courts of all cases arising under the Bankruptcy Act and all civil proceedings arising in or related to cases brought under 11 U.S.C. Although automatic, the referral may subsequently be withdrawn by the district court for any reason at any time during the proceedings. The bankruptcy courts may issue orders which become effective upon entry in all traditional bankruptcy proceedings. In “related cases,” defined in part as “claims brought by the estate against the parties who have not filed claims against the estate” (the
 
 Northern Pipeline
 
 type case), only the district court may issue a final
 
 *257
 
 order unless the parties consent to disposition by the bankruptcy judge. Finally, all orders entered by the bankruptcy judges are subject to
 
 de novo
 
 review in the district courts. Orders issued in “related” matters
 
 must
 
 be reviewed by the district court, while orders entered in the standard or traditional proceedings may be reviewed upon the motion of a party or
 
 sua sponte
 
 by the district court. The full text of the “interim rule” is contained in the appendix to this opinion.
 

 White Motor contends that the system embodied in the interim rule, which modifies the procedures established by the 1978 Act, gives the Bankruptcy Court jurisdiction to continue to conduct the White Motor reorganization proceedings. Under this jurisdiction, the debtor contends, the bankruptcy judge may appoint a special master to facilitate the reorganization process. Therefore, White Motor petitions this Court to have the order appointing a special master reinstated.
 

 B. The Creditors’ Contentions
 

 The Bank Creditors basically agree with the debtor that the Bankruptcy Court may continue to operate under the interim rule without violating the principles enunciated by the Supreme Court in
 
 Northern Pipeline.
 
 The appellees simply maintain that the Bankruptcy Court had no authority to appoint a special master. Thus, they also challenge the reasoning employed by Judge Aldrich to invalidate the appointment Order. The Bank Creditors ask that this Court remand the case to the District Court for a decision in that forum, not in the Bankruptcy Court, as to whether the appointment of a special master is appropriate.
 

 C. The Government’s Contentions
 

 The United States has filed a brief in this case as an
 
 amicus curiae
 
 to emphasize its position that “the public interest demands that, if there is any possible statutory basis for the continuation of a constitutional judicial system for bankruptcy, it should be invoked.” Government’s Brief, p. 2. The government asserts, as do the parties in this case, that
 
 Northern Pipeline
 
 did not deprive the district courts of their jurisdiction in bankruptcy matters under §§ 1471(a) and (b) or under § 1334. The government maintains that the interim rule is a constitutionally valid and necessary exercise of judicial power in response to the crisis in the bankruptcy system.
 

 II. RETROSPECTIVE APPLICATION
 

 Although the six plurality and concurring justices in
 
 Northern Pipeline
 
 agree that the decision should be applied prospectively only, the effect of the decision remains open to debate. We interpret the retroactivity part of the decision to mean that the bankruptcy courts cannot operate under the jurisdictional grant contained in § 1471(c) as of December 24, 1982. We do not believe, as White Motor contends, that the Supreme Court wanted a distinction to be made between unadjudicated cases that were commenced prior to the lifting of the stay and those that are filed after December 24, 1982.
 

 The Supreme Court cited three cases in a footnote to explain the nature of the prospective-only provision.
 
 Northern Pipeline, supra,
 
 102 S.Ct. at 2880 n. 41. The first,
 
 Buckley v. Valeo,
 
 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), involved the constitutionality of the Federal Elections Committee as created by the Federal Election Campaign Act. The Court determined that the Commission could not perform many of its legislative and adjudicatory functions because the method established by Congress for the appointment of its members did not comply with the Appointments Clause of the Constitution, Art. II, § 2, cl. 2. The Court specified on the page cited in the
 
 Northern Pipeline
 
 footnote, that the past actions of the Commission would remain valid despite the
 
 Buckley
 
 decision:
 

 It is also our view that the Commission’s inability to exercise certain powers because of the method by which its members have been selected should not affect the validity of the Commission’s administrative actions and determinations to this date, including its administration of those provisions, upheld today, authorizing the
 
 *258
 
 public financing of federal elections. The past acts of the Commission are therefore accorded de
 
 facto
 
 validity, just as we have recognized should be the case with respect to legislative acts performed by legislators held to have been elected in accordance with an unconstitutional apportionment plan.
 

 Id.
 
 at 142, 96 S.Ct. at 693. (citations omitted) Furthermore, the Court allowed the Commission to keep operating with all of the powers envisioned by the FECA for one month so that Congress would have an opportunity to reconstitute the Commission in a valid manner.
 

 We believe that the
 
 Buckley
 
 decision does not stand, as White Motor suggests, as authority for the continued adjudication by the bankruptcy courts of cases filed prior to the lifting of the stay. In
 
 Buckley,
 
 the Supreme Court simply refused to create a chaotic situation by overturning all of the prior decisions of the Elections Commission. The Court did not, however, go so far as to permit the Commission to continue to perform any of the unconstitutional powers after the lifting of the stay. Similarly, we find that the Supreme Court did not intend to sanction the continued operation of the bankruptcy courts
 
 under § 1471(c)
 
 after December 24, 1982, with respect to pending matters. To prevent undue disruption, as in
 
 Buckley,
 
 the Court, by foreclosing retrospective application of
 
 Northern Pipeline,
 
 simply refused to permit challenges to past acts or final determinations of the bankruptcy courts.
 

 In the second case cited in footnote 41,
 
 Chicot County Drainage District v. Baxter State Bank,
 
 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), the Supreme Court ruled on the effect of its previous determination that a particular grant of jurisdiction to the district courts was unconstitutional. In Ashton v. Cameron County
 
 District,
 
 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309 (1936), the Court had declared unconstitutional the statute allowing the district courts to adjust municipal debts in a bankruptcy proceeding. The district court in
 
 Chicot
 
 had approved a debt readjustment two 'months prior to the Supreme Court’s decision that the district courts had no jurisdiction to do so. The creditors failed to raise the constitutional issue on direct review. Instead, they waited until after the plan for readjustment became embodied in a final order and then they sought to attack the readjustment in collateral proceedings. The Supreme Court denied the appeal, declaring that rulings of the district court which had become final could not be attacked collaterally even if the original action was taken under an unconstitutional grant of jurisdiction.
 

 In the context of the
 
 Northern Pipeline
 
 decision, we believe that
 
 Chicot
 
 merely teaches that final rulings rendered under an unconstitutional grant of jurisdiction may not later be challenged collaterally. Nowhere does
 
 Chicot
 
 address the issue of what should happen with cases pending when the statute is found unconstitutional. Therefore, we must conclude that the reference to
 
 Chicot
 
 was included in footnote 41 simply to emphasize that the prospective-only provision in
 
 Northern Pipeline
 
 simply validates orders and dispositions by the bankruptcy courts which became final in the Bankruptcy Court as of December 24, 1982.
 

 Finally, the Supreme Court cites a footnote in
 
 Insurance Corp. of Ireland v. Compagnie des Bauxites,
 
 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), which reads as follows:
 

 A party that has had an opportunity to litigate the question of subject matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of
 
 res judicata
 
 apply to jurisdictional determinations— both subject matter and personal. See
 
 Chicot County Drainage Dist. v. Bank,
 
 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940);
 
 Stoll v. Gottleib,
 
 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).
 

 Id.
 
 102 S.Ct. at 2104, n. 9. In
 
 Insurance Corp.,
 
 the Court was asked to resolve whether the district court could accept without proof that personal jurisdiction had been established in a case in which the defendants refused to comply with a dis
 
 *259
 
 covery order aimed at producing evidence of the court’s
 
 in personam
 
 jurisdiction. In its explanation for upholding the sanction, the Court reviewed the differences between personal and subject matter jurisdiction. The footnote cited in
 
 Northern Pipeline
 
 (quoted above) merely restates the general
 
 res judicata
 
 rule that final orders and decisions may not be challenged in collateral actions on the basis of lack of jurisdiction. As with
 
 Chicot, supra,
 
 this footnote lends no credence to the argument that a court may continue to adjudicate a matter after its jurisdictional grant has been declared unconstitutional. Both
 
 Chicot
 
 and
 
 Insurance Corp.
 
 refer to the finality of final orders which are the only actions of the bankruptcy courts which we believe the Supreme Court intended to protect in its prospective-only directive.
 

 Thus, neither the bankruptcy courts nor special masters appointed by bankruptcy courts retain jurisdiction under § 1471(c) of Title 28, the provision invalidated in
 
 Northern Pipeline,
 
 to decide unadjudicated cases and issues after December 24, 1982. Our holding in this respect disposes of White Motor’s first argument, but it does not necessarily mean that the bankruptcy courts lack a more limited derivative or referred jurisdiction as a result of delegation by Article III judges acting pursuant to the authority vested in them by Congress. We, therefore, proceed to examine the other arguments advanced by the parties supporting the derivative jurisdiction of the bankruptcy courts.
 

 III. THE JURISDICTION OF THE DISTRICT COURTS
 

 In order to assess the validity of the interim rule by which the district courts have referred cases to the bankruptcy courts, we must first determine the jurisdiction of the district courts after
 
 Northern Pipeline.
 
 Some bankruptcy courts have held in the past few months that
 
 Northern Pipeline
 
 declared the district courts’ jurisdiction over bankruptcy matters unconstitutional along with the grant of jurisdiction to the bankruptcy courts.
 
 See, e.g., In Re Conley,
 
 26 B.R. 885 (Bkrtcy.M.D.Tenn.1983);
 
 In Re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court,
 
 23 B.R. 334 (Bkrtcy.N.D.Ga.1982);
 
 In Re Schear Realty & Investment Co.,
 
 25 B.R. 463, 1983 Bankr.L.Rep. (CCH) § 68,949 (Bkrtcy.S.D.Ohio 1982). We do not agree with this view.
 

 Basically these courts have taken the position that Congress intended that bankruptcy courts have exclusive original jurisdiction over bankruptcy matters. The 1978 Act reformed the then-existing system to eliminate the bifurcated jurisdiction of the bankruptcy and district courts. In their view, Congress envisioned the district courts as having
 
 only
 
 the appellate review granted in the new 28 U.S.C. § 1334 as amended by the 1978 Act. Since the Supreme Court declared the grant of jurisdiction in § 241(a) of the 1978 Act to be invalid and further found that this grant was non-severable, these courts have concluded that jurisdiction over bankruptcy proceedings remains in no court. We cannot accept this fatalistic analysis because we find that, in spite of
 
 Northern Pipeline,
 
 there remain at least two valid statutory grants of original jurisdiction over bankruptcy cases to the district courts.
 

 First, the
 
 Northern Pipeline
 
 decision simply does not question the jurisdiction of the district courts.
 
 Northern Pipeline
 
 involved the adjudication by a non-Article III court of an action brought by the debtor against a third party who was not making a claim against the estate. The case was essentially peripheral to the bankruptcy proceeding. Had the debtor not been a bankrupt, the matter would have necessarily been adjudicated in state court. The plurality broadly concluded that the expansive delegation of power to non-Article III tribunals in the 1978 Act could not be “sustained as an exercise of Congress’ power to create adjuncts to Article III courts.”
 
 Northern Pipeline, supra,
 
 at 102 S.Ct. 2880. The Court rejected the option of removing the bankruptcy courts’ jurisdiction over this particular limited class of peripheral matters. The plurality found it necessary to declare the entire grant of jurisdiction to
 
 *260
 
 the bankruptcy courts under § 241(a) of the 1978 Act unconstitutional.
 
 Id.
 
 102 S.Ct. at 2880, n. 40.
 

 The concurrence clarified this broad holding, however, by stating specifically that:
 

 I would, therefore, hold so much of the Bankruptcy Act of 1978 as enables a
 
 Bankruptcy Court
 
 to entertain and decide Northern’s lawsuit over Marathon’s objection to be violative of Art. Ill of the United States Constitution. Because I agree with the plurality that this grant of authority is not readily severable from the remaining grant of authority to
 
 Bankruptcy Courts
 
 under § 241(a), see
 
 ante,
 
 [102 S.Ct.] at 2880 n. 40,1 concur in the judgment, (emphasis added).
 

 Id.
 
 102 S.Ct. at 2882
 

 Without a majority, the only clear holding in
 
 Northern Pipeline
 
 must be the more limited view expressed in the concurring opinion. In the passage quoted above, Justices Rehnquist and O’Connor specifically refer to the unconstitutional grant of jurisdiction only to the bankruptcy courts; the concurrence never even mentions the district courts. We do not believe that the concurring Justices intended to issue a broad declaration that the grant of jurisdiction in bankruptcy matters, which for two hundred years have been adjudicated under the auspices of the district courts, is unconstitutional, without ever referring directly to the district courts, to their historical role in the bankruptcy system, or to the various sources of their jurisdiction contained in the old and new Bankruptcy Acts.
 

 In addition, Justices Rehnquist and O’Connor suggest that the plurality may be deciding much more than is called for under the facts of the case:
 

 Particularly in an area of constitutional law such as that of “Art. Ill Courts,” with its frequently arcane distinctions and confusing precedents, rigorous adherence to the principle that this Court should decide no more of a constitutional question than is absolutely necessary accords with both our decided cases and with sound judicial policy.
 

 Id.
 
 102 S.Ct. at 2881. We do not interpret the concurrence as going beyond the invalidation of § 1471(c) to a holding that the entire bankruptcy system is unconstitutional. The statement that the unconstitutional grant of authority is “not readily severable” from the remainder of the jurisdiction refers only to the relatively new expansive grant of jurisdiction to the bankruptcy courts. Thus, we hold that §§ 1471(a) and (b) giving the district courts original jurisdiction in all cases under Title 11 were not affected by the Supreme Court’s decision in
 
 Northern Pipeline.
 

 Even assuming,
 
 arguendo,
 
 that the Supreme Court invalidated all of § 1471, the district courts retain original jurisdiction over bankruptcy matters under 28 U.S.C. § 1334 which provides as follows:
 

 The district courts shall have original jurisdiction, exclusive of the states, of all matters and proceedings in bankruptcy.
 

 Congress established a new system under § 1471 but did not repeal the jurisdictional grant in § 1334 until April 1, 1984.
 
 See
 
 § 402(b) of the 1978 Act. At that time, § 1334 is to be amended to give the district courts only appellate jurisdiction over bankruptcy matters.
 
 See
 
 § 238 of the 1978 Act.
 

 Several bankruptcy courts and some commentators have maintained that Congress inadvertently left the old § 1334 intact until 1984. They stress that the grant of original and exclusive jurisdiction to the district courts in the old § 1334 conflicts with the more elaborate split jurisdictional grant in § 1471 and has, therefore, effectively been repealed. Thus, they conclude that § 1334 cannot be utilized as an alternative to § 1471 during the period from December 24, 1982, until the new § 1334 becomes effective on April 1, 1984.
 
 See, e.g., In Re Conley,
 
 26 B.R. 885 (Bkrtcy.M.D.Tenn.1983); Letter from Commercial Law League of America to Hon. Peter W. Rodino, Jr.,
 
 reprinted in
 
 H.R.Rep. No. 807, 97th Cong., 2d Sess. 44 (1982); Vihon,
 
 Delegation of Authority and the Model Rule: The Continuing Saga of Northern Pipeline,
 
 1983 Com.L.J. 64, 67-68.
 

 
 *261
 
 We do not interpret Congress’ failure to repeal the old § 1334 as an oversight. Several members of Congress expressed concern during the hearings on the 1978 Act that the Act conferred unconstitutionally broad powers on the non-Article III bankruptcy judges.
 
 See Hearings on H.R. 31 and H.R. 32 before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary,
 
 94th Cong., 2d Sess. 2081, 2084 and 2682-2706 (1976); H.R.Rep. No. 595, 95th Cong., 1st Sess. 23-39,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5984-6000.
 
 See also Northern Pipeline, supra,
 
 102 S.Ct. at 2866 n. 12. Rather than endow the bankruptcy judges with the protections of Article III, Congress delayed the repeal of § 1334 until the constitutional question could be settled.
 
 See
 
 1
 
 Collier on Bankruptcy,
 
 § 301 at 3-37 (15th ed. 1982). While the transitional sections of the 1978 Act provide for a new and enlarged role for the bankruptcy courts under § 1471(e), Congress purposefully chose not to eradicate the original jurisdiction historically residing in the district courts. Intending to avoid precisely the situation created by
 
 Northern Pipeline,
 
 Congress left the district courts’ jurisdiction over bankruptcy matters intact.
 

 Even if we were to accept the view that Congress did not intend that § 1334 continue in force simultaneously with § 1471, under long-standing principles of statutory construction, § 1334 is “revived” by the invalidation of the new § 1471. It has long been held that a statute which is unconstitutional does not repeal a prior statute on the subject when a contrary construction would create a void in the law which the legislative body did not intend. The prior statute is “revived” to avoid a chaotic hiatus in the law.
 
 See
 
 1A
 
 Sutherland Statutory Construction
 
 § 23.24 (4th ed. 1973); 73
 
 Am Jur
 
 2d § 382;
 
 Frost v. Corporation Comm’n of Oklahoma,
 
 278 U.S. 515, 526-27, 49 S.Ct. 235, 239, 73 L.Ed. 483 (1929);
 
 Truax v. Corrigan,
 
 257 U.S. 312, 342, 42 S.Ct. 124, 133, 66 L.Ed. 254 (1921) (original jurisdictional statute revived when amendment granting additional jurisdiction to issue writs declared unconstitutional as violation of equal protection of the laws). Therefore, even if we assume that § 1471 operated as an implied repeal of the old § 1334, the repeal becomes a nullity with the invalidation of § 1471.
 

 We, therefore, conclude that under §§ 1471(a) and (b) and the old § 1334, the district courts may adjudicate bankruptcy proceedings filed after December 24, 1982.
 

 IV. THE INTERIM RULE
 

 Since the formation of the nation, the federal judiciary has had an obligation of the highest order to maintain a stable, functional process of dispute resolution in cases arising under federal law. In particular, the drafters of the Constitution considered the creation of a uniform bankruptcy system to be so important that they included a special section in Article I of the Constitution providing for federal power in this area.
 
 [3]
 
 Since Congress has mandated that the district courts have original jurisdiction in bankruptcy cases, the district courts have the responsibility to ensure that bankruptcy matters proceed to conclusion in a fair and expeditious manner. The district courts have adopted the interim rule outlined above as a means of fulfilling this responsibility in the aftermath of
 
 Northern Pipeline.
 
 The district courts have both the authority to adopt the interim rule and the obligation to provide for the continuing orderly conduct of bankruptcy proceedings. We hold that the interim rule does not violate federal statutory and constitutional principles and does not conflict with the Supreme Court’s ruling in
 
 Northern Pipeline.
 
 Rather, the rule adheres as closely as possible, within the constitutional limitations announced in
 
 Northern Pipeline,
 
 to the structure of the bankruptcy system which Congress established in the 1978 Act.
 

 In addition to the district courts’ primary, obligation to ensure the continued viability of the legal system, the district courts have
 
 *262
 
 statutory authorization to adopt the interim rule. The rule was initially promulgated under specific statutory provisions directed to the Judicial Conference and the Judicial Councils of the Circuits. When it requested that the Administrative Office draft a model rule, the Judicial Conference of the United States acted under the statutory authority of 28 U.S.C. § 331 which provides in part:
 

 The conference ... shall submit suggestions to the various courts, in the interest of uniformity and expedition of business.
 

 The Judicial Conference properly responded to a crisis in the bankruptcy system by submitting a suggestion, in the form of a model rule of procedure, to ensure the “uniform and expeditious” processing of bankruptcy petitions.
 

 The Judicial Councils of the eleven Circuits then directed the District Courts to adopt the model rule pursuant to 28 U.S.C. § 332 which provides:
 

 Each judicial council shall make all necessary orders for the effective and expeditious administration of the business of the courts within its circuit. The district judges shall promptly carry into effect all orders of the judicial council.
 

 The Judicial Council of the Sixth Circuit determined in December that
 
 Northern Pipeline
 
 was about to create a situation of extreme uncertainty and disarray in the courts of the circuit. Consequently, the Council concluded that “the uniform effective and expeditious administration of justice within this Circuit requires that the attached rule for the administration of the bankruptcy system in this Circuit be adopted by the District Courts.... ” Order of the Judicial Council of the Sixth Circuit, December 21, 1982.
 

 One purpose of this grant of authority to Article III judges sitting as Judicial Councils is similar in nature to the purpose of the doctrine outlined above permitting revival of repealed statutes when the new statute is declared invalid. Both may at times operate to prevent a gap or void in institutional arrangements on which society has come to depend. The law disfavors chaos. A purpose of both is to provide stability in the operation of the basic legal institutions. By delegating to Article III judges sitting in council the authority to “make all necessary orders for the effective and expeditious administration” of judicial business, Congress has granted the authority to adopt emergency measures to prevent the collapse of the bankruptcy system. The interim rule is intended to remain in effect only until Congress itself has an opportunity to fill the void.
 

 Although the Council ordered the district courts in this Circuit to adopt the interim rule, the district courts have independent statutory authority to adopt such procedural rules in bankruptcy matters. Section 105(a) of the Bankruptcy Code provides that “the bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.”
 
 [4]
 
 Section 105(a) of the 1978 Act is supplemented by the general power of the district courts to enact rules and procedures for the administration of their courts. Under 28 U.S.C. § 2071 the district courts “may from time to time prescribe rules for the conduct of their business.” The Judicial Council of the Sixth Circuit and the district courts in the Circuit recognized that the orderly processing of thousands of pending bankruptcy proceedings as well as those filed in the aftermath of
 
 Northern Pipeline
 
 would be jeopardized absent some remedial action by the courts. In the meantime, a countless number of creditors and debtors, already suffering from financial hardship, would be subjected to uncertainty and delay in their attempts to return to economic stability. The district courts and the Judicial Council must try to minimize confusion and disarray under their broad rule-making powers by implementing the interim rule. It is obvious to
 
 *263
 
 this Court that the possibility of confusion and uncertainty arising from the
 
 Northern Pipeline
 
 decision made it necessary and appropriate for the district courts to adopt a rule for the administration of the bankruptcy system after December 24, 1982.
 

 Although the district courts have the authority to adopt rules for the administration of bankruptcy cases which are within their jurisdiction, these rules must not violate the Constitution as construed in Northern Pipeline. The procedures adopted must also resemble, as closely as is permissible, the part of the system envisioned by Congress that has not been invalidated. We find that the interim rule does not conflict with the holding in
 
 Northern Pipeline
 
 and is not prohibited by Art. Ill of the Constitution. The interim rule provides the courts with a means of complying with the Supreme Court’s directives in
 
 Northern Pipeline
 
 while adhering to the will of Congress which is best illuminated by the 1978 Act and its predecessor, the Chandler Act.
 

 The interim rule does not violate the Constitution because the district courts retain primary jurisdiction over all bankruptcy proceedings. The bankruptcy courts have only derivative jurisdiction. They do not operate under an exclusive grant of jurisdiction as in § 1471(c) but rather derive their jurisdiction from the district courts as under the Chandler Act. The district courts retain control and primary responsibility for the conduct of bankruptcy proceedings. The interim rule implants sufficient mechanisms in the existing system to ensure that bankruptcy cases are resolved through a constitutionally valid process.
 

 The thrust of the
 
 Northern Pipeline
 
 holding is that peripheral, non-traditional bankruptcy issues such as claims by the bankrupt against non-creditors cannot be adjudicated by a non-Art. Ill judge. The interim rule responds to this deficiency in several ways. First, the bankruptcy judges may not issue binding judgments in “related” proceedings. In these cases, the bankruptcy judges are limited to submitting findings of fact and proposed rulings which must be reviewed
 
 de novo
 
 by the district court whether or not an appeal has been taken by the parties.
 
 See
 
 Rule (e)(2)(A)(iii). This contrasts dramatically with the practice under the 1978 Act of having appellate review — applying the clearly erroneous standard — by the district court only upon the motion of a party. The bankruptcy courts perform a function similar to a magistrate or special master in cases which are only peripherally related to the bankrupt estate.
 

 Second, the referees under the Chandler Act and the bankruptcy judges after the 1973 Amendments have adjudicated traditional bankruptcy matters including claims against the estate without constitutional challenge for over a century. The Supreme Court, nevertheless, withdrew the bankruptcy judges’ jurisdiction to do so under § 1471(c) when it declared the jurisdictional grants non-severable. In response to this holding, the interim rule institutes several protective changes in the procedures for the adjudication of all bankruptcy cases, “related” and traditional. The district courts have specific authority to revoke the referral of any case to the bankruptcy court upon the district court’s own motion or upon the request of a party for any reason. Thus, the district courts can ensure that the parties receive a just resolution of bankruptcy cases within the limitations established by Art. III.
 

 Third, even in traditional bankruptcy cases, the district courts may hold a hearing and receive evidence in cases first adjudicated by the bankruptcy court. The district court need give no deference to the bankruptcy judge’s factual findings or interpretations of the law. The district court may modify, in whole or in part, any order or judgment issued by the bankruptcy judge.
 
 See
 
 Rule (e)(2)(B).
 

 We believe that the powers reserved by the district courts in the interim rule satisfy the Supreme Court’s concern that Art. Ill courts adjudicate bankruptcy cases. The constitutional rights of the parties to a bankruptcy proceeding are not violated when the bankruptcy courts with derivative jurisdiction assist the district courts.
 

 
 *264
 
 We find support for our view in the brief per curiam opinion in
 
 In Matter of Braniff Airways,
 
 700 F.2d 214 (5th Cir., 1983), in which the Fifth Circuit upheld District Court jurisdiction under §§ 1334 and 1471(a) and (b) of Title 28 and in
 
 Color Craft Press, Ltd. v. Nationwide Shopper Systems, Inc.,
 
 27 B.R. 962 (D.C.Utah 1983), in which four district judges in Utah joined together in a clear and thoughtful opinion upholding district court jurisdiction and the Interim Rule. Reversing the District’s bankruptcy judges who had held invalid the jurisdiction of district courts and the Interim Rule, the court concluded as follows:
 

 In short, the jurisdictional vacuum claimed to exist does not in fact exist. The bankruptcy power, and particularly the Article III power denied the bankruptcy judges, is alive, well, and residing in the United States District Court, which through its Interim Rule calls upon the existing bankruptcy structure to assist in its exercise. Such exercise is under the ultimate control and supervision of the United States District Court. The rule enacted by this court is concerned with methodology for accomplishing a district court duty. With all vestiges of mandated delegation removed, all civil proceedings arising under title 11 are district court matters. The bankruptcy court and staff are enlisted, through the rule, to assist the district court in resolving district court civil proceedings. The type of referral incorporated in the Interim Rule is not new. It is often and historically used with special masters, general masters, and magistrates. The administrative device to effectively carry out the district court duty and power is the judicial, elective order of reference. Such a device did yeoman service in the bankruptcy field from at least 1898 until 1978 and does yeoman service in other fields as well.
 

 Through the Interim Rule the district court can take advantage of the existing judicial and administrative structure of the United States Bankruptcy Courts.
 

 Who better to have matters referred to than those with in-place expertise and administrative staffs? As Edward H. Warren once said:
 

 We seek to build a juristic structure with foundations as solid, and with lines as simple and stately, and with vistas as spacious as those befitting a colonial mansion.
 

 E. Warren, The Rights of Margin Customers Against Wrongdoing Stockbrokers.
 
 9 (Plimpton 1941). In this particular case, although the mansion still stands, Congress and, perhaps, the courts have some repairs to make. The rule adopted by this court on December 24, 1982, similar in scope and function to rules around the country,
 
 [5]
 
 is a device by which the power of the United States District Court in the field of bankruptcy can be exercised until those repairs are made.
 

 V. THE SPECIAL MASTER
 

 We turn now to the question of the propriety of the appointment of the special master by the bankruptcy court. Judge Aldrich vacated the Bankruptcy Judge’s Order because she found that the Bankruptcy Court would not have jurisdiction after December 24, 1982, over the many pending products liability cases filed against White Motor. We have determined in Part II above that
 
 Northern Pipeline
 
 deprives the bankruptcy court of jurisdiction under § 1471(c) as of December 24, 1982, as the court below found. However, under the interim rule, the White Motor case was automatically referred to the bankruptcy court.
 
 See
 
 interim rule (c)(1). Pursuant to interim rule (d)(1), in the absence of district court action to the contrary, the bankruptcy judge may perform all acts necessary for the handling of the White Motor case including the adjudication of the products liability cases. The debtor is the defendant in all of these products cases, not the plaintiff as in
 
 Northern Pipeline.
 
 These claims seek distributions from the debtor’s estate for the benefit of individual creditors. The cases fall within the traditional jurisdiction
 
 *265
 
 of the bankruptcy courts and do not constitutionally require trial by an Article III court, as did
 
 Northern Pipeline.
 

 The district court has the power under the interim rule to withdraw the referral of a bankruptcy matter at any time and may vacate or modify orders of the bankruptcy court. Although the District Court erred in concluding that the Bankruptcy Court had no jurisdiction over these cases, Judge Aid-rich had the authority to vacate the Order entered by the Bankruptcy Court. As a matter of good bankruptcy administration, we believe that the eases involving difficult legal and factual issues should, if practicable, be heard by a judicial officer, the District Court, the Bankruptcy Court or a U.S. Magistrate appointed as special master. If the District Court should appoint the Magistrate as a special master, it should comply with Rule 53, Fed.R.Civ.Pro. In addition, the District Court in these cases may want to consider whether under all of the circumstances it will permit the cases to go forward in the courts where they were pending initially. The Order vacating the appointment Order shall be treated as a withdrawal by the District Court of that portion of the White Motor reorganization dealing with the disposition of the products liability cases. Under interim rule (c)(2), the District Court may refer back to the Bankruptcy Court any part of the White Motor products liability litigation with instructions specifying the powers and functions that the bankruptcy judge may exercise.
 

 We, therefore, remand this case to the District Court for further proceedings. After a hearing, the District Court should determine the best method of adjudicating the products liability cases at issue here within the framework outlined in this opinion.
 

 Accordingly, the case is reversed and remanded to the District Court.
 

 APPENDIX
 

 RULE
 

 (a)Emergency Resolution
 

 The purpose of this rule is to supplement existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court’s decision in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 -U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), or until March 31, 1984, whichever first occurs.
 

 The judges of the district court find that exceptional circumstances exist. These circumstances include: (1) the unanticipated unconstitutionality of the grant of power to bankruptcy judges in section 241(a) of Public Law 95-598; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts’ assuming the existing bankruptcy caseload on short notice.
 

 Therefore, the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges.
 

 (b) Filing of bankruptcy papers
 

 The bankruptcy court constituted by § 404 of Public Law 95-598 shall continue to be known as the United States Bankruptcy Court of this district. The Clerk of the Bankruptcy Court is hereby designated to maintain all files in bankruptcy cases and adversary proceedings. All papers in cases or proceedings arising under or related to Title 11 shall be filed with the Clerk of the Bankruptcy Court regardless of whether the case or proceeding is before a bankruptcy judge or a judge of the district court, except that a judgment by the district-judge shall be filed in accordance with Rule 921 of the Bankruptcy Rules.
 

 (c) Reference to Bankruptcy Judges
 

 (1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are
 
 *266
 
 referred to the bankruptcy judges of this district.
 

 (2) The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party. A motion for withdrawal of reference shall not stay any bankruptcy matter pending before a bankruptcy judge unless a specific stay is issued by the district court. If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge, or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the court’s usual system for assigning civil cases.
 

 (3) Referred cases and proceedings may be transferred in whole or in part between bankruptcy judges within the district without approval of a district judge. (d) Powers of Bankruptcy Judges
 

 (1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:
 

 (A) a proceeding to enjoin a court;
 

 (B) a proceeding to punish a criminal contempt—
 

 (i) not committed in the bankruptcy judge’s actual presence; or
 

 (ii) warranting a punishment of imprisonment;
 

 (C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge; or
 

 (D) jury trials.
 

 Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.
 

 (2) Except as provided in (d)(3), orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the bankruptcy judge or a district judge.
 

 (3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by an estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.
 

 (B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.
 

 (e) District Court Review
 

 (1) A notice of appeal from a final order or judgment or proposed order or judgment of a bankruptcy judge or an application for leave to appeal an interlocutory order of a bankruptcy judge, shall be filed within 10 days of the date of entry of the judgment or order or of the lodgment of the proposed judgment or order. As modified by sections (e)2A and B of this rule, the procedures set forth in Part VIII of the Bankruptcy Rules apply to appeals of bankruptcy judges’
 
 *267
 
 judgments and orders and the procedures set forth in Bankruptcy Interim Rule 8004 apply to applications for leave to appeal "•interlocutory orders of bankruptcy judges. Modification by the district judge or the bankruptcy judge of time for appeal is governed by Rule 802 of the Bankruptcy Rules.
 

 (2)(A) A district judge shall review:
 

 (i) an order or judgment entered under paragraph (d)(2) if a timely notice of appeal has been filed or if a timely application for leave to appeal has been granted;
 

 (ii) an order or judgment entered under paragraph (d)(2) if the bankruptcy judge certifies that circumstances require that the order or judgment be approved by a district judge, whether or not the matter was controverted before the bankruptcy judge or any notice of appeal or application for leave to appeal was filed; and
 

 (iii) a proposed order or judgment lodged under paragraph (d)(3), whether or not any notice of appeal or application for leave to appeal has been filed.
 

 (B) In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.
 

 (3) When the bankruptcy judge certifies that circumstances require immediate review by a district judge of any matter subject to review under paragraph (d)(2), the district judge shall review the matter and enter an order or judgment as soon as possible.
 

 (4) It shall be the burden of the parties to raise the issue of whether any proceeding is a related proceeding prior to the time of the entry of the order of judgment of the district judge after review.
 

 (f)Local Rules
 

 In proceedings before a bankruptcy judge, the local rules of the bankruptcy court shall apply. In proceedings before a judge of the district court, the local rules of the district court shall apply.
 

 (g) Bankruptcy Rules and Title IV of Public Law 95-598
 

 Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95-598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by SEC. 405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holding of
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 -U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).
 

 (h) Effective Date and Pending Cases
 

 This rule shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bankruptcy matters pending before a bankruptcy judge on December 25, 1982 shall be deemed referred to that judge.
 

 [1]
 

 . The relevant sections of 28 U.S.C. § 1471 provide as follows:
 

 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 

 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 

 (c)The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
 

 [2]
 

 . 28 U.S.C. § 1334 provides as follows:
 

 The district courts shall have original jurisdiction, exclusive of the states, of all matters and proceedings in bankruptcy.
 

 [3]
 

 . The Constitution, Art. I, § 8, cl. 4, grants Congress authority to establish “uniform Laws on the subject of Bankruptcies throughout the United States.”
 

 [4]
 

 . Bankruptcy courts are defined in § 404(a) of the 1978 Act to include the “courts of bankruptcy” as defined under § 1(10) of the Chandler Act which in turn defines the “courts of bankruptcy” to include the United States district courts.
 
 See
 
 1
 
 Collier on Bankruptcy
 
 § 2.01 at 2-4.
 

 [5]
 

 . Similar rules were recently upheld in
 
 In re Northland Point Partners,
 
 26 B.R. 860 (D.C.E.D.Mich.1983), and
 
 In re Braniff Airways, Inc., et al.,
 
 27 B.R. 231 (D.C.N.D.Tex.1983).