**In re GRANGER GARAGE, INC., Ow Granger Garage Sales and Equipment, Inc., Debtor.**

**Myron E. WASSERMAN, Trustee, Plaintiff–Appellant,**

v.

**Mark IMMORMINO, Defendant–Appellee.**

No. 89–4022.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 13, 1990.

Decided Nov. 30, 1990.

James M. Wilsman, Dennis R. Rose, Hahn, Loeser & Parks, Michael J. Garvin (argued), Cleveland, Ohio, for plaintiff-appellant.

Patricia S. Kleri (argued), Rosenzweig, Schulz & Gillombardo, Cleveland, Ohio, for defendant-appellee.

Before MARTIN and WELLFORD, Circuit Judges, and SILER, Chief District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

In this appeal from a bankruptcy order, an attorney for a group of creditors, Mark Immormino, was to indemnify the trustee for losses incurred in the public sale of certain assets from the estate. The district court reversed the decision of the bankruptcy court, holding that Mr. Immormino never agreed to any indemnification and that the bankruptcy court lacked the authority to require Mr. Immormino to personally indemnify the creditors. We deny the trustee's motion to reverse this order.

This case began when creditors filed an involuntary bankruptcy petition against the debtor, Granger Garage Sales and Equipment, Inc., on May 6, 1981, under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* On April 30, 1982, the bankruptcy court appointed an interim trustee, Myron Wasserman. A court-appointed appraiser

* The Honorable Eugene E. Siler, Jr., Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

conducted an appraisal of the debtor's property on May fourth and tenth; the appraiser valued the property, consisting primarily of a dynamometer and a 1970 tow truck, at $35,058. On June 1, 1982, the trustee filed a complaint to sell all the debtor's property.

On August 25, 1982, the trustee filed a motion to accept a private bid of $22,500 for all assets of the estate. Creditors represented by Mr. Immormino objected to the private sale. Mr. Immormino chiefly contended that there was good reason to believe more money could be gleaned from a public sale, because the private sale price was less than two-thirds of the appraised value of the property and several other potential buyers had expressed interest in bidding on the property. Mr. Immormino also contended that the proposed private sale would work a fraud on the court, alleging that the proposed buyer, LBJ, Inc., was the alter ego of the debtor.

The bankruptcy court held a hearing for these objections on September 2, 1982; it quickly dismissed Mr. Immormino's objections to LBJ, Inc. as a prospective purchaser, and expressed reluctance to jeopardize a firm offer to buy the debtor's assets. Despite this reluctance, the bankruptcy court continued the hearing on the condition that Mr. Immormino indemnify the debtor's estate for any loss resulting from a public sale.

When the bankruptcy court reconvened the hearing on September 17, 1982, the court-appointed auctioneer testified that the LBJ bid was "very fair," but admitted that he had not solicited any other bids. The auctioneer had received a letter dated September 14, 1982, from Petroleum Specialties Company, stating that Petroleum Specialties was willing to bid $27,000 for the property, subject to inspection. Mr. Immormino stated that he had received a copy of the Petroleum Specialties letter, in addition to three other letters expressing interest in bidding on the property. After discussion with Mr. Immormino, the trustee, and the auctioneer, the bankruptcy court denied the motion for a private sale and ordered the requested public sale. The bankruptcy court then stated that Mr. Immormino would be personally liable for indemnifying the trustee for any difference between the "firm" offer of Petroleum Specialties and the amount realized from the public sale, minus costs. At the suggestion of the trustee, the court instructed Mr. Immormino to post a bond for $40,000 to assure the indemnification.

Contrary to the rules of procedure, the bankruptcy court did not enter any written order regarding this indemnification. Fed. R.Bank.P. 921(a); Fed.R.Civ.Pro. 58. On September 23, 1982, Mr. Immormino sent a letter to the trustee in which he withdrew any indemnification offer and stated that he had been unable to obtain a bond. Mr. Immormino filed a copy of this letter in the bankruptcy court.

Pursuant to the bankruptcy court's order, the auctioneer held a public sale on September 28, 1982; only $5,300 was received for the debtor's property. LBJ, Inc., had rescinded its $22,500 bid the day before the sale.

On October 7, 1982, the bankruptcy court held a hearing on the confirmation of the public sale. Mr. Immormino challenged the propriety of the sale, asserting that the equipment had been stripped of all working parts. The auctioneer recommended acceptance of the bids. The bankruptcy court confirmed the sale and directed Mr. Immormino indemnify the estate in the amount of $17,200. The court entered its judgment of indemnity on October 14, 1982, and its confirmation of the sale on October 29, 1982.

On October 22, 1982, Mr. Immormino filed a motion for reconsideration of the bankruptcy court's judgment of indemnification. An evidentiary hearing was held in which Mr. Immormino presented evidence that the equipment had been deliberately disassembled in order to reduce its sale value. The bankruptcy court stated that there was "no question that there was foul play," but still held Mr. Immormino responsible for the indemnification because there was no proof as to who had devalued the machines. The bankruptcy court relied on its finding that Mr. Immormino had vol-

unteered to indemnify the creditors for any loss from the sale.

Mr. Immormino appealed this judgment to the district court on July 6, 1983. For reasons not explained in the record or discussed by the parties, the district court did not render its decision for six years. When the appeal was finally decided, the district court reversed the bankruptcy court. The district court held that any finding by the bankruptcy court that Mr. Immormino had voluntarily indemnified the debtor's estate was clearly erroneous, and that the bankruptcy court lacked the authority to order personal indemnification by an attorney.

■ The trustee now appeals the judgment of the district court, seeking the restoration of the bankruptcy court's indemnification order. The trustee contends Mr. Immormino voluntarily agreed to indemnify the creditors for any loss from a sale. Although we doubt Mr. Immormino made such an agreement which would violate the Code of Professional Responsibility and the Rules of Professional Conduct, we need not decide this issue because the bankruptcy court did not have subject matter jurisdiction over Mr. Immormino.

■ The bankruptcy court is a court of limited jurisdiction. *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983). Bankruptcy Judges for each circuit are appointed by the United States Court of Appeals for that Circuit. 28 U.S.C. § 151. Bankruptcy courts now, and at the time of this order was issued, have only derivative jurisdiction; "They do not operate under an exclusive grant of jurisdiction as in § 1471(c) but rather derive their jurisdiction from the district courts...." *White Motor Corp.,* 704 F.2d at 263. *See Northern Pipeline v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); 28 U.S.C. § 1471; *compare* 28 U.S.C. § 1334 (Jurisdictional provision amended by Congress after *Northern Pipeline* ).

■ The trustee argues that the court correctly issued this order under the powers granted the bankruptcy court in 11 U.S.C. §§ 363(e) and 105(a). Section 363(e) allows a bankruptcy court to prohibit or condition the sale if necessary to provide adequate protection of the interest. Section 105(a) grants the bankruptcy courts the power to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Neither § 363(e) or § 105(a) are jurisdictional provisions. The subject matter jurisdiction of the bankruptcy court is limited to that which congress specifically grants. *See White Motor Corp.,* 704 F.2d at 259–261. This jurisdiction at the time the order was issued was limited to 28 U.S.C. § 1471(a) and (b). *Northern Pipeline,* 458 U.S. at 54, 102 S.Ct. at 2862; *White Motor Corp.,* 704 F.2d at 259. Neither § 1471(a) or (b) grant subject matter jurisdiction over an indemnification order to an attorney who argued the creditor's motion for public sale; thus, the bankruptcy court had no power to hold the creditor's attorney personally liable under § 363(e), § 105(a) or any other section of the Bankruptcy Code.

■ Nor do the bankruptcy court's equitable powers allow it to impose indemnity on a creditor's attorney. Those equitable powers may only be exercised within the confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). A bankruptcy court does not have unfettered equity powers. *Id.* A bankruptcy court cannot extend its subject matter jurisdiction under the guise of acting "equitably." Because congress did not grant the bankruptcy court subject matter jurisdiction, the equitable powers of the bankruptcy court can not be used to impose the order either. *Id.* Indeed, even if the court had the power, such an indemnification order would have been inequitable, not equitable. Equity opposes placing the interests of an attorney against those of his client. The bankruptcy court order placed a creditor's attorney in the dilemma of acting in his own best interest to avoid the potential liability of personal indemnification or of acting in his client's best interest by actually incurring that liability. We cannot hold such a result to be "equitable."

For the foregoing reasons, we deny the trustee's motion.