GUY, Circuit Judge.
 

 Defendants appeal an order of the district court reversing the bankruptcy court’s denial of plaintiff's request for relief from the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362, as well as reversing the bankruptcy court’s refusal to remand the case to state court. For the reasons stated below, we affirm.
 

 On March 20, 1975, plaintiff Boone Coal leased to Polan, the debtor-lessee, several tracts of land in Magoffin County, Kentucky, upon which plaintiff held broad form coal mining rights. Polan was to pay plaintiff a recoupable minimum annual royalty of $25,000 on March 20 of each year. For each ton of coal produced from the property, Polan was to pay a production royalty of six percent of the gross sales price. Under article 11 of the lease, Polan was required to maintain accurate records of account upon all coal mined from the property, including sales price and tonnage produced. The lease was terminable upon default in payment or performance.
 

 Between 1975 and 1981, plaintiff issued numerous notices of default to Polan upon his failure to promptly pay the tonnage royalties and minimum annual rentals re
 
 *1058
 
 quired by the lease. After notice, those defaults were timely cured by Polan. In 1981, the lease was amended to permit Polan to sublease a portion of the properties to Magoffin Coal Company. Thereafter, Magoffin Coal mined the subleased portion and paid those royalties due under the sublease to Polan who forwarded to plaintiff its production royalties. Later, plaintiff and Polan amended the lease to the extent that Magoffin Coal was instructed to make payment of its production royalties directly to plaintiff.
 

 In March of 1982, Polan began experiencing financial difficulties. He did not pay the $25,000 minimum annual royalty due on March 20, 1982. Plaintiff notified Polan of his default, in accordance with article 14 of the lease, by letter sent April 21,1982. On May 20, 1982, Polan wrote to plaintiff that he had received the notice of default on April 26, 1982. Polan also informed plaintiff that he believed the minimum royalty payment had been made by his sublessee, Magoffin Coal Company, by two checks totalling $25,132.10. Polan requested plaintiff to contact him if the checks had not been received.
 

 As was made clear during the hearing below, a substantial portion of the $25,-132.10 paid by Magoffin Coal Company to plaintiff was in payment for production royalties on coal that had been mined during the preceding lease year. Therefore, the minimum annual royalty had not been paid in full on March 20,1982. On May 24, 1982, plaintiff served notice of the termination of the lease on the debtor, Polan, and advised him of its intention to reenter and retake possession of the property.
 

 On February 28, 1983, plaintiff filed suit in the Magoffin County Circuit Court for a declaratory judgment to terminate the lease. A year later, on January 4, 1984, an involuntary Chapter 11 petition was filed against Polan in the bankruptcy court and, on January 20, 1984, plaintiff’s state court action was removed to the bankruptcy court.
 

 Plaintiff filed a motion before the bankruptcy court for relief from the automatic stay provisions of 11 U.S.C. § 362 and to remand the case back to the state court. At issue before the bankruptcy court was whether the coal lease was validly terminated before the petition in bankruptcy was filed, thus extinguishing the debtor’s interest in the lease, and precluding its inclusion as property of the estate under 11 U.S.C. § 541 or its assumption by the trustee under 11 U.S.C. § 365.
 

 The bankruptcy court held an evidentiary hearing on March 13, April 5 and 12, 1984, and subsequently entered an order denying plaintiff’s motion for relief from the stay and request for remand. The district court reversed that decision, lifting the automatic stay, and directing the bankruptcy court to remand the action to the state court. Defendants argue on appeal that the district court was without authority to review the bankruptcy court’s denial of plaintiff’s motion to remand, and that the district court erred in reversing the bankruptcy court’s denial of plaintiff’s motion for relief from the stay.
 

 L
 

 In support of their contention that the district court was without authority to review the bankruptcy court’s order denying remand, defendants rely on 28 U.S.C. § 1478:
 

 (a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit’s police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.
 

 (b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of
 
 *1059
 
 action, or a decision not so remanding, is not reviewable by appeal or otherwise.
 
 [1]
 

 Defendants maintain that the last sentence of subsection (b) precluded review of the bankruptcy court’s refusal to remand plaintiff’s state court action. It is unclear whether they challenged below the authority of the district court to do so. Plaintiff, on the other hand, contends that this provision prohibits our review of the district court’s order to remand the state court matter.
 

 Construction of this provision is complicated by
 
 Northern Pipeline Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), invalidating the delegation of Article III judicial power to bankruptcy courts under the 1978 Bankruptcy Reform Act. In response to this decision, the district courts adopted local emergency rules which provided that district judges would oversee the bankruptcy courts in related proceedings, and would themselves enter orders and judgments in connection with such proceedings. In
 
 White Motor Corp. v. Citibank, N.A.,
 
 704 F.2d 254 (6th Cir.1983), this court held that the district court retained original jurisdiction over bankruptcy proceedings pursuant to 28 U.S.C. § 1334.
 

 Because the district court had original jurisdiction over the matter removed from state court, its review of the bankruptcy court’s refusal to remand was not an appeal. Rather, it was more in the nature of a review of a recommendation made by the bankruptcy judge.
 
 Hanna v. Philadelphia Asbestos Co.,
 
 743 F.2d 996 (3d Cir.1984). This court agrees with the Third Circuit in
 
 Hanna
 
 to the extent that the district court, in reviewing the remand order, was acting in the place of the bankruptcy court, and acted upon the motion to remand as a court of original jurisdiction.
 
 [2]
 

 This conclusion, in turn, necessarily implicates the power of this court to review the district court’s decision to remand plaintiff’s state court matter.
 
 [3]
 
 In
 
 Pacor v. Higgins,
 
 743 F.2d 984 (3d Cir.1984), the court read § 1478(b) as precluding appellate review only of orders remanding cases on equitable grounds, and not forbidding the court’s examination of whether there was a statutory and constitutional basis for assuming jurisdiction over a particular matter in a federal court.
 
 Id.
 
 at 993. It thus concluded that remand orders based on jurisdictional grounds were reviewable, but if the district court chose to remand or declined to remand for equitable reasons, that
 
 *1060
 
 decision would be unreviewable.
 
 See also In re Bobroff,
 
 766 F.2d 797 (3d Cir.1985) (district court’s remand order reviewable as a collateral order).
 

 In
 
 Browning v. Navarro,
 
 743 F.2d 1069 (5th Cir.1984), the court addressed whether a remand order is reviewable by an appellate court. The court noted that the purpose of making nonreviewable the bankruptcy court’s remand order, or it’s decision not to remand, was to avoid the delay that would result from litigating remand decisions (citing 1 Collier on Bankruptcy § 3.01, at 3-80.1—3-81 (15th ed. 1984)). The court held that § 1478(b) clearly prohibited its review of a bankruptcy court’s remand order on direct appeal, noting that 28 U.S.C. § 1447(d), the general remand provision, likewise establishes that remand orders of a district court are unreviewable on direct appeal.
 
 Briscoe v. Bell,
 
 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977);
 
 Volvo of America Corp. v. Schwarzer,
 
 429 U.S. 1331, 97 S.Ct. 284, 50 L.Ed.2d 273 (Rehnquist, Circuit Justice, 1976) (nonre-viewability bar applies whenever a federal court remands on the basis of a remand statute even if the federal court was in error in applying the statute).
 

 Furthermore, the Fifth Circuit held that § 1478(b) barred indirect review of a remand order, stating:
 

 It is axiomatic that remanding a case to state court terminates the jurisdiction of a federal bankruptcy or district court over that case.
 
 United States v. Rice,
 
 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982 (1946) (applying 28 U.S.C. § 71);
 
 Robertson v. Ball,
 
 534 F.2d 63, 66 n. 5 (5th Cir.1976) (“[Ojnce the federal district court considers the proper factors and decides to remand, the action should go forward in state court without the further delay of appeal, and without regard to whether the federal district court was correct or incorrect”); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3739 (1976 & Supp.1983);
 
 cf. E.D. Systems Corp. v. Southwestern Bell Telephone Co.,
 
 674 F.2d 453 (5th Cir.1982) (federal court lost jurisdiction as to claims it remanded to state court, but retained jurisdiction over proceedings excepted from the remand order). Even a federal court, persuaded that it has issued an erroneous remand order, cannot vacate the order once entered.
 
 In re LaProvindencia Development Corp.,
 
 406 F.2d 251 (1st Cir.1969).
 
 [26]
 
 The federal court is completely divested of jurisdiction once it mails a certified copy of the order to the clerk of the state court.[] Ringle, Moore’s Federal Practice § 0.169[2—.1], at 697 (2d ed. 1983); 14 C. Wright, A. Miller & E. Cooper,
 
 supra,
 
 § 3739, at 764-65;
 
 see also Bucy v. Nevada Construction Co.,
 
 125 F.2d 213 (9th Cir.1942) (district court could review and set aside its own erroneous remand order before filing of certified copy of order in state court because remand order is not self-executing); Bankruptcy Rule 9027(e). “[Ojnce a district court has decided to remand a case and has so notified the state court, the district judge is without power to take any further action.”
 
 Federal Deposit Insurance Corp. v. Santiago Plaza,
 
 598 F.2d 634, 636 (1st Cir.1979).
 

 743 F.2d at 1078-79. The court, borrowing from the First Circuit, explained its reasoning:
 

 
 *1061
 

 In Re LaProvidencia Development, supra,
 
 at 252-53 (emphasis added).
 

 743 F.2d at 1078 n. 26.
 

 The reasoning and authority provided by the Fifth Circuit are persuasive. Accordingly, we hold that a decision of the district judge to remand a case from the bankruptcy court to state court is not reviewable by this court.
 
 See also In Re Potts,
 
 724 F.2d 47 (6th Cir.1984) (bankruptcy court’s
 
 refusal
 
 to remand a case to the court from which it was removed is not reviewable under § 1478(b));
 
 Crocker National Bank v. Rayburn,
 
 781 F.2d 501 (5th Cir.1986) (appeal barred under § 1452(b));
 
 Compton v. Compton,
 
 711 F.2d 626 (5th Cir.1983) (whether remand order be viewed as one of abstention or as one grounded in a perceived want of jurisdiction, court is not empowered to review it);
 
 Shell Pipe Line Corp. v. West Texas Marketing Corp.,
 
 540 F.Supp. 1155 (S.D.Texas 1982) (district court, in
 
 pre-Northem Pipe Line
 
 case, could not hear “appeal” of remand decision of bankruptcy court).
 

 II.
 

 There is no corresponding statutory prohibition barring our review of the district court’s lifting of the automatic stay. Title 11 U.S.C. § 362(a) provides for an automatic stay of acts to enforce a lien against or to obtain possession of property of the debtor or of the estate upon the filing of a petition in bankruptcy. The question before the bankruptcy court was whether the debtor retained an interest in the leased land at the time the petition in bankruptcy was filed. If the debtor retained a legal or equitable interest, it would be included in the bankrupt estate under 11 U.S.C. § 541(a) and relief from the stay would not be justified. Thus, it was necessary for the bankruptcy judge to determine whether the lease had been properly terminated under Kentucky law prior to the filing of the petition in bankruptcy.
 

 The bankruptcy judge concluded that the forfeiture provision in the lease which plaintiff sought to have enforced should be strictly construed against the plaintiff lessor. Two provisions of the lease are especially pertinent to the bankruptcy judge’s analysis. Article 14 set forth the procedures for termination based on default in payment:
 

 If default be made by the lessee in the payment of the rentals and royalties herein reserved and such default is continued for a period of thirty (30) days after written notification thereof by the lessor to the lessee, ... then and in the event of any such default, and as often as the same occurs, the lessor may, at its option terminate this lease by mailing written notice of such termination by registered mail to the lessee advising the lessee that this lease has been terminated. Immediately upon mailing and not the receipt of such second notice this lease shall be terminated and the lessor may reenter upon and take possession of the lease premises ...
 

 The lessor also reserves the right to pursue any and all remedies available under the laws of the State of Kentucky for violation of any covenant, term, condition, or agreement hereof and all such remedies shall be deemed cumulative and not exclusive.
 

 Article 19, the notice provision, states:
 

 The giving of any notice to, or the making of any demand on Lessee, shall be sufficient if in writing, addressed to the Lessee, and mailed by certified mail, return receipt requested, to the Lessee at its principal office at Salyersville, Kentucky, ... and the mailing of such notice and not the receipt thereof shall constitute the giving of such notice ...
 

 The bankruptcy judge concluded that the thirty-day period within which the debtor had to cure default, after notice of default as set forth in Article 14, should be deemed to run from the date of
 
 receipt
 
 of the default notice, which he found to be April 26, 1982. Under this reasoning, the judge found the notice of termination, dated May
 
 *1062
 
 24,1982, to be premature. The bankruptcy court continued:
 

 By May 26, 1982, the last day for curing default after notice, Boone Coal and Timber Company had received the minimum royalty payments referred to in the debt- or’s letter of May 20, 1982, and presumably had received said letter. It is not readily apparent how Boone Coal and Timber Company could discern from the royalty report of Magoffin Coal Company dated April 19, 1982 ... accompanying the payment of $20,925.34 for coal mined in March just how much of these monies was for coal mined after March 20, 1982. There was sufficient validity to the debtor’s claim that the minimum royalty payments exceeded the amount of the annual rental called for by the lease to require investigation by Boone Coal and Timber Company and consultation with the debtor before attempting to cancel the lease by issuance of the notice of termination ... The court is of the opinion the notice of termination was premature and invalid and should be given no effect.
 

 (App. 17.) The bankruptcy judge thus found that Polan still retained a legal interest in the lease so as to bring it within the bankrupt estate. Moreover, relying on
 
 Sabastien v. Floyd,
 
 585 S.W.2d 381 (Ky.1979), where the Kentucky Supreme Court held that land sale contracts should be treated as analogous to conventional mortgages, thus requiring a seller to seek a judicial sale of the property upon the buyer’s default, the bankruptcy judge concluded that Polan retained an equitable interest in the leased real property which could be terminated only by judicial decree.
 

 The district court reversed, noting initially that the standard of review was whether the bankruptcy court’s determination was clearly erroneous. However, the court also made note that since there was no factual dispute over the date and manner of default and termination notices, the question of whether proper and timely notices were given presented a legal issue. The district court gave deference to the bankruptcy judge’s findings of facts, but reviewed his legal conclusions
 
 de novo.
 

 [4]
 

 The district court framed the issues as: (1) whether the lessee failed to make timely payment of minimum rental due March 20, 1982; and, if so, (2) whether the lessor, under the terms of the lease, gave proper and timely notices of default and termination of the lease. As to the first issue, neither the bankruptcy judge nor the district judge found that the minimum royalty payment had been made by March 20,1982. The bankruptcy judge simply concluded that Polan’s claim of payment was sufficiently valid to require the lessor to investigate and consult with Polan before issuing notice of termination. The district court overruled this conclusion since Polan had testified only that he was advised by Ma-goffin Coal Company that the amounts of the checks paid to plaintiff totalled more than $25,000. Polan did not inquire as to the breakdown of such payments nor attempt further to determine if the minimum annual royalty payment had been made.
 
 *1063
 
 Yet, as the district court correctly pointed out, under Article 11 of the lease, Polan was charged with the responsibility of keeping accurate and correct records of coal mined. The court further noted that the bankruptcy judge’s finding that plaintiff should have been required to make an investigation and consult with Polan before attempting to cancel the lease was not supported by the evidence or the contract.
 

 The second issue, identified by the district court as a legal issue, involved the construction of the lease contract, particularly the forfeiture provision of Article 14. Although noting that under Kentucky law forfeiture provisions are not favored, the court also recognized that “in the absence of circumstances justifying relief, courts do not make contracts different from those that the parties make for themselves, even when forfeiture provisions are harsh.”
 
 Miller Dairy Products Co. v. Puryear,
 
 310 S.W.2d 518, 521 (Ky.1957).
 
 See also Fidelity Mortgage Co.,
 
 19 B.R. 568 (Bankr.E.D.Pa.1982). The district court determined that the notices of default and termination complied with the requirements of the lease. Thus, the issue was whether the notice of default was effective at the time of mailing or at the time the debtor received it on April 26, 1982. The court found:
 

 The forfeiture provision (Article Fourteen) did not prescribe how and in what manner the default notice would be served upon Polan other than it being characterized as a “written notification.” While this article does require the termination notice to be in writing, that it be sent by registered mail, and that it was effective upon mailing, it does not specify the address to which it should be sent. Reading Article Nineteen together with Article Fourteen, all the requirements of the manner for the serving of a notice by either party upon the other is clear. The lease provides for mutual responsibilities for the serving of such notices by either party. The lease provides specific requirements of a written notice, by. certified mail, specific address of each party and that notice to either party was effective upon mailing, rather than upon receipt. Thus, Polan specifically agreed to notices in writing sent by certified mail to his principal office in Salyersville, Kentucky; and that the notices were effective upon being deposited in the mail_ While these provisions may appear harsh in some respects, they were agreed to by Polan and each party was mutually bound thereby.
 

 Article Fourteen (14) and Nineteen (19), when read together are consistent, clear, without ambiguity and complement each other.
 

 It being clear that both the notice of default was given on April 21, 1982, and notice of termination was given on May 24, 1982, in accordance with the requirements of the lease that the default in the payment of the minimum rental continued for thirty (30) days after April 21, 1982, thus the notice of termination was proper and timely. The refusal of the bankruptcy court to grant Boone relief from the automatic stay and to remand to the state court was clearly erroneous.
 

 (App. 29-30.)
 

 Defendants argue that the district court erred in reversing the bankruptcy court. They first contend that the bankruptcy judge’s finding that the default notice was only effective upon receipt was correct. Defendants cite
 
 Baldwin v. Fidelity Phenix Fire Insurance Company of New York,
 
 260 F.2d 951 (6th Cir.1958), for the proposition that notice provisions are generally construed as effective upon receipt.
 
 See also
 
 58 Am.Jur.2d, Contracts § 27. However, resort to rules of construction is unnecessary where, as here, the contract unambiguously addresses the question. Article 19 provides that notices are effective when mailed. There is no need to interpret this section. The bankruptcy judge’s conclusion that because Article 14 states that the termination notice is effective upon mailing, by negative implication, default notices must be effective upon receipt, renders Article 19 meaningless. The district court’s conclusion, that when read together Articles 14 and 19 set forth
 
 *1064
 
 all notice and mailing procedures, is correct. The lease contract is unambiguous, and resort to general principles of contract interpretation is unnecessary.
 

 III.
 

 Defendants also challenge the district court’s reversal of the bankruptcy judge’s conclusion that plaintiff had a duty to investigate the debtor’s protestations of payment before terminating the lease. Defendants contend that this failure to investigate precludes enforcement of the forfeiture clause. The bankruptcy judge agreed with defendants.
 

 The district court correctly reversed. This argument ignores the point that, in the lease contract, it was the debtor who was charged with the duty to keep accurate accounts and books regarding the amount of royalties due plaintiff. To hold otherwise, as did the bankruptcy judge, is to make a contract “different from [that] the parties [made] for themselves, even [though the] forfeiture provisions are harsh.”
 
 Miller Dairy Products,
 
 310 S.W.2d at 521.
 

 IV.
 

 Finally, defendants submit that the bankruptcy judge was correct in concluding that the debtor retained an equitable interest in the leased property that could only be terminated by judicial decree. The bankruptcy judge relied on
 
 Sabastien v. Floyd, supra.
 
 In
 
 Sabastien,
 
 the Kentucky Supreme Court, noting the modern trend of courts to treat land sale contracts as analogous to conventional mortgages, held that the seller’s remedy for breach of a land contract was to obtain a judicial termination and sale of the property. The extension of this principal to leases of property, made by the bankruptcy judge, was not only unwarranted but unsupportable. Upon purchase of property on a land contract, the buyer obtains equitable title to the property, with the seller retaining bare legal title.
 
 Sabastien,
 
 585 S.W.2d at 382. No such transfer occurs when property is leased, and there has been no claim here that the lease was in the nature of a disguised security transaction. Moreover, pursuing the bankruptcy judge’s reasoning, all leases would have to be terminated by judicial decree, and the lessee’s remaining interest
 
 sold
 
 by judicial sale. The district court correctly reversed the bankruptcy judge on this issue.
 

 V.
 

 The defendants have also argued, apparently for the first time on appeal, that plaintiff waived its right to declare default against the lessee by accepting royalty payments from the debtor’s
 
 sublessee
 
 for the coal mined on the sublessee’s portion of the property. This argument was apparently not raised before the district court, and the district court did not address it in the memorandum order and opinion on appeal. As such, it is not properly before the court. Fed.R.App.P. 3(c).
 

 The decision of the district court is AFFIRMED.
 

 [1]
 

 . The "appeal” to the district court was taken while § 1478, as modified by the interim emergency rules, was in effect. By the time of the district court’s ruling, Congress had enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, effective July 10, 1984. Pub.L. No. 98-353 (1984). As amended, § 1478 has been recast as § 1452. The new Act, in order to accommodate
 
 Northern Pipeline Co.
 
 v.
 
 Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), has done no more than to make reference to the "district court” instead of the "bankruptcy court" in relevant sections. Thus, § 1452 has the same effect as § 1478 as interpreted together with the interim emergency rules.
 

 [2]
 

 . This conclusion is reinforced by the interim emergency rules. Rule d(3)(A) defined "related proceedings" as those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a District Court or a State Court. Subsection (B) stated that "[i]n related proceedings the Bankruptcy Judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the District Judge, unless the parties to the proceeding consent to entry of the judgment or order by the Bankruptcy Judge." Thus, the bankruptcy judges, while acting under the emergency rules, were prohibited from entering binding orders in "related proceedings.”
 
 See White Motor Corp.,
 
 704 F.2d at 263.
 

 [3]
 

 .This issue is now governed by 28 U.S.C. § 1452, which makes clear that cases are removed from state court to the district court, not the bankruptcy court. This statute was enacted after the "appeal" to the district court, but before the district court’s decision, and under the general rule of
 
 Harper-Grace Hospitals
 
 v.
 
 Schweiker,
 
 691 F.2d 808, 811 (6th Cir.1982) (court is to apply the law in effect at the time it renders its decision), is applicable on appeal. Because § 1452 is essentially the same as § 1478 as modified by the interim emergency rules,
 
 see
 
 note 1,
 
 supra,
 
 there is no doubt that the district court could properly review the bankruptcy court’s refusal to remand. Likewise, our analysis here is equally applicable under § 1452 or § 1478 as modified by the interim emergency rules.
 

 [26]
 

 . The First Circuit, although writing in the context of a diversity case, made the following germane comments:
 

 Removal ... to the prejudice of state court jurisdiction, is a privilege to be strictly construed, ... and the state court proceedings are to be interfered with once, at most. This is not only in the interest of judicial economy, but out of respect for the state court and in recognition of principles of comity.
 
 The action must not ricochet back and forth depending upon the most recent determination of a federal court.
 

 ...
 
 [TJhere is no more reason for a district court being able to review its own decision, and revoke the remand, than for an appellate court requiring it to do so. Both are foreclosed; nothing could be more inclusive than the
 
 *1061
 
 phrase “on appeal or otherwise.” The district court has
 
 one shot, right or wrong.
 

 [4]
 

 . As noted above, under the interim emergency rules, bankruptcy judges were not empowered to issue binding judgments in "related” cases. In those cases, bankruptcy judges were limited to submitting findings of fact and proposed rulings which were reviewed
 
 de novo
 
 by the district court whether or not an appeal was taken by the parties. Rule e(2)(A)(iii). The district court was not required to give any deference to the bankruptcy court’s factual findings or interpretations of law, and the court could modify, in whole or in part, any order of judgment issued by the bankruptcy judge. Rule e(2)(B).
 
 See White Motor Corp.,
 
 704 F.2d at 263.
 

 Under Bankruptcy Rule 8013, the district court is directed that “findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.” The Advisory Committee Note makes clear that the rule accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Fed.R.Civ.P. 52. There is no doubt here but that the district judge weighed the bankruptcy judge’s findings of fact under the clearly erroneous standard. The only question is whether he accorded too much deference to the bankruptcy judge’s conclusions of law. Since the district judge reversed the bankruptcy judge, any error was harmless.