99 F.3d 1138
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
COMERCIA BANK, Plaintiff-Appellant,
v.
SUBURBAN TRUST AND SAVINGS BANK and Columbia National Bank
of Chicago, Defendants-Appellees.
 No. 95-1551.
 United States Court of Appeals, Sixth Circuit.
 Oct. 10, 1996.
 
 Before: GUY, BATCHELDER, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Comerica Bank (Comerica), sued defendants, Suburban Trust and Savings Bank (Suburban), and Columbia National Bank of Chicago (Columbia), in this diversity action arising out of the parties' respective loan transactions with a common borrower, Computer Leasco, Inc. (Computer Leasco).[1] Computer Leasco repaid defendants on their loans but defaulted on plaintiff's loan. It was then discovered that Computer Leasco had pledged the same collateral on defendants' loans as it had pledged on plaintiff's loan. The president of Computer Leasco ultimately pleaded guilty to two counts of bank fraud. Plaintiff alleges that under Article 9 of Michigan's Uniform Commercial Code governing secured transactions, sales of accounts and chattel paper, Mich.Comp.Laws Ann. §§ 440.9101 et seq. (West 1994), it held a superior perfected security interest in the collateral. Comerica is seeking recovery from defendants for the balance of its unpaid loan under theories of conversion, fraudulent conveyance, and unjust enrichment. The district court granted summary judgment to defendants on all claims. Having reviewed the record and the arguments on appeal, we affirm.
 
 I.
 
 2
 The debtor, Computer Leasco, operated a computer equipment leasing company in Michigan. It financed equipment purchases through bank loans secured by a security interest in equipment leases, lease payments, and the leased equipment itself. Volvo G.M. Heavy Truck Corp. was one of Computer Leasco's principal customers. On July 23, 1986, Volvo and Computer Leasco entered into Master Equipment Lease Agreement 1301 (the Master Lease Agreement). Under that agreement, Volvo agreed to lease equipment from Computer Leasco through equipment schedules, which themselves would constitute separate leases. The dispute in this case involves two particular equipment schedules entered into as a result of that agreement, Schedule 13 and Schedule 14.
 
 
 3
 In late 1988, Computer Leasco borrowed $511,000 from plaintiff in connection with Schedule 13.[2] The parties entered into a security agreement executed on September 30, 1988, purportedly granting Comerica, as collateral a security interest in the Schedule 13 lease, the lease payments and the leased equipment. In referencing the collateral, however, the agreement only referred to the Master Lease Agreement and an attached Exhibit A, which exhibit plaintiff was unable to produce for purposes of this litigation.[3] There is no mention of Schedule 13. Plaintiff did take possession of an original copy of the Schedule 13 equipment lease. Plaintiff's copy, however, as contained in the record, does not include Exhibit A to that lease, which purportedly described the items to be leased.
 
 
 4
 The following month, on October 28, 1988, Comerica filed a financing statement with the Secretary of State in Michigan, covering its security interest. Like the security agreement, the financing statement only referred to the Master Lease Agreement and not Schedule 13: "This financing statement covers the following types (or items) of property[:] One lease # 1301 dated July 23, 1986 Between Computer Leasco, Inc. as lessor, and Volvo GM Heavy Truck Corp. as lessee, with equipment as follows: See attached Exhibit A." (App. at 906.) (emphasis added). No document entitled Exhibit A was attached to the financing statement. The statement did, however, include twelve pages of equipment invoices.[4]
 
 
 5
 Instead of using Comerica's loan to purchase computer equipment, however, Computer Leasco took the funds and diverted them to another venture.
 
 
 6
 Meanwhile, Computer Leasco used the same equipment lease, Schedule 13, to pledge the same collateral to Suburban for loans totalling approximately $1.15 million. Suburban, in lending the money, did not perform a UCC search to determine whether any existing security interests might be claimed against the pledged collateral. Instead, it took possession of an original copy of Schedule 13, including Exhibit A describing the items to be leased. As a further precaution, Suburban had Computer Leasco assign to Suburban its rights in the Schedule 13 equipment lease payments from Volvo. Therefore, Suburban was repaid on its loan through lease payments received directly from Volvo.
 
 
 7
 Computer Leasco next double pledged Schedule 14. In early 1989, Computer Leasco borrowed $783,187 from Comerica to finance equipment purchases covered by lease Schedule 14. This time, unlike the documents drafted regarding Comerica's Schedule 13 loan, the security agreement and financing statement specifically referenced the particular equipment lease, Schedule 14. In addition, Comerica took possession of an original, complete copy of Schedule 14.
 
 
 8
 Computer Leasco then financed the same equipment lease through Columbia, pledging the same Schedule 14 collateral as pledged to Comerica, in exchange for a $1.87 million loan. In structuring the loan, Columbia obtained a security agreement in the form of a promissory note from Computer Leasco to Columbia. Columbia also took possession of an original, complete copy of Schedule 14. It employed the same safeguards as used by Suburban in structuring its loan on Schedule 13. Columbia obtained an assignment of rights from Computer Leasco in the lease payments, and Volvo paid the lease payments directly to Columbia. Comerica, in contrast, did not implement these protective measures in structuring either its Schedule 13 or Schedule 14 loans to Computer Leasco. Instead of obtaining an assignment of the Volvo lease payments, Comerica relied on its security interest in the collateral and payments from Computer Leasco.
 
 
 9
 In September 1991, Computer Leasco defaulted on its loan payments to Comerica, and Comerica learned for the first time of the competing security interests held by Suburban and Columbia in the Schedule 13 and Schedule 14 collateral. At that time, Columbia had already been repaid as of November 6, 1990. Suburban continued to receive payments from Volvo until March 30, 1993, when its loans were fully repaid.
 
 
 10
 Comerica sued Suburban and Columbia for conversion of the Schedule 13 and Schedule 14 lease payments. In response, Columbia filed a motion to dismiss Comerica's claim as to its Schedule 14 loan as time-barred. The district court granted the motion.[5] Comerica then amended its complaint to add claims of fraudulent conveyance and unjust enrichment. It later filed for summary judgment on the conversion claim against Suburban and its fraudulent conveyance claims against both defendants. Suburban and Columbia filed oppositions to Comerica's motion and filed counter-motions for summary judgment on all claims. The court denied plaintiff's motions and granted defendants' motions. Comerica now appeals the district court's judgments.
 
 II.
 A. Statute of Limitations
 
 11
 We first consider whether Comerica's claim that Columbia converted the Schedule 14 lease payments was time-barred. Columbia argued that Michigan's three-year statute of limitations governing injuries to persons or property applied. See Mich.Comp.Laws Ann. § 600.5805(8) (West 1987). That provision provides, in pertinent part, as follows:
 
 
 12
 A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.... (8) The period of limitations is 3 years after the time of the death or injury ... for injury to a person or property.
 
 
 13
 Id. The district court agreed that § 600.5805(8) controlled and concluded that because Columbia was repaid on its loan by November 6, 1990, more than three years before Comerica's conversion claim had been filed, Comerica's claim was untimely.
 
 
 14
 In reaching its decision, the court relied on Continental Casualty Co. v. Huron Valley Nat'l Bank, 271 N.W.2d 218 (Mich.Ct.App.1978). In that case, the court held that the three-year statute, as opposed to the six-year statute, applied to plaintiff's conversion claim. In reaching this conclusion, the court relied on numerous Michigan cases that define the tort of conversion as an injury to property. See id. at 220 and cases cited therein. The court further noted that other jurisdictions also applied three-year statute of limitations to conversion claims.
 
 
 15
 In an attempt to distinguish this authority, plaintiff argues that the claims covered by § 600.5805(8) for injuries to persons and property are not analogous to Comerica's conversion claim. Instead plaintiff argues that its claim is an injury to "financial expectations," which action is governed by Michigan's six-year "catch-all" statute of limitations set forth in Mich.Comp.Laws Ann. § 600.5813 (West 1987). That provision states: "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes." In addition, plaintiff seeks to limit the holding of Continental Casualty to its facts, involving conversion of a check and therefore implicating Article 3 of the Uniform Commercial Code. Alternatively, plaintiff claims that even if the three-year period under § 600.5805(8) applies, the claim did not accrue until it was discovered by Comerica.
 
 
 16
 When deciding a diversity case under state law, a federal court must apply the law of the state's highest court. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). When that court has not yet ruled on the issue at hand, however, a federal court must ascertain the state law from "all relevant data." Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir.1985); see also Mahne v. Ford Motor Co., 900 F.2d 83, 87 (6th Cir.), cert. denied, 498 U.S. 941 (1990) (to the extent the state supreme court has not yet addressed the present issue it is our duty to anticipate how that court would rule). Relevant data include decisions from other jurisdictions or the majority rule. 770 F.2d at 604. We are not to disregard state appellate court decisions unless we are convinced that the highest court of the state would have decided otherwise. E.g., Monette v. AM-7-7 Baking Co., 929 F.2d 276, 280-81 (6th Cir.1991).
 
 
 17
 We reject plaintiff's arguments. First, the court of appeals' analysis in Continental Casualty turned on the nature of a conversion claim as involving an allegation of injury to property. Second, plaintiff's "financial expectations" argument on appeal is not properly before this court as plaintiff failed to make this argument before the district court. Boone Coal and Timber Co. v. Polan, 787 F.2d 1056, 1064 (6th Cir.1986). Comerica in effect argues that a longer statute of limitations should apply to its conversion claim because in essence the claim is not a claim of conversion. Yet a claim of conversion is clearly recognized under the Michigan Uniform Commercial Code under these circumstances. For example, Mich.Comp.Laws Ann. § 440.9306(2) (West 1994) provides that a security interest continues in collateral notwithstanding disposition thereof unless disposition is otherwise authorized by the secured party. Comment 3 to that provision further states that in an instance of unauthorized disposition of collateral, the secured party may repossess the collateral or maintain an action for conversion against the transferee. Id. at § 440.9306(2), cmt. 3. Comerica has taken exactly this action in this suit.
 
 
 18
 Having concluded that the three-year statute of limitations for injury to property applies to Comerica's conversion claim, we next consider when a claim for conversion accrues. The district court, again relying on the Continental Casualty decision, held that Comerica's claim accrued at the time the alleged conversion occurred. Comerica argues that assuming the three-year period applies, its claim did not accrue until it discovered the claim, that is, when Computer Leasco defaulted on its loan payments to Comerica in September 1991, within three years of the filing of Comerica's claim in December 1993.
 
 
 19
 Under Michigan law, unless otherwise expressly provided, the period of limitations runs from the time a claim accrues. See Mich.Comp.Laws Ann. § 600.5827 (West 1987). A claim accrues unless otherwise provided by statute "at the time the wrong upon which the claim is based was done regardless of the time when damage results." Id. The term "wrong," as used in that section "refers to the date on which the plaintiff was harmed" by defendant's tortious act. Stephens v. Dixon, 536 N.W.2d 755, 756 (Mich.1995).
 
 
 20
 In this case, Comerica alleges there was no damage until Computer Leasco defaulted on the loan payments. While that may be true, that assertion ignores the statutory standard for claim accrual. Comerica is not suing for default on the loan but rather for conversion of collateral. As that cause of action is alleged, Comerica was harmed each time Columbia received a Schedule 14 equipment lease payment, i.e., each time an unauthorized disposition of collateral occurred. See Mich.Comp.Laws Ann. at § 440.9306(2), cmt. 3. In addition, application of a date of discovery rule would frustrate the "strong public policy of finality in commercial transactions." Insurance Co. of North America v. Manufacturers Bank of Southfield, N.A., 338 N.W.2d 214, 216 (Mich.Ct.App.1983) (declining to apply discovery rule to conversion action by payee to recover for payment on forged indorsement).
 
 
 21
 B. Plaintiff's Conversion Claim Against Suburban
 
 
 22
 We next consider the district court's grant of summary judgment in favor of Suburban on plaintiff's conversion claim. Comerica alleged Suburban converted the Schedule 13 equipment lease payments that were assigned to Suburban from Computer Leasco.[6] The district court found that Comerica did not have an attached, enforceable security interest in the Schedule 13 payments, and therefore it could not have had a perfected security interest superior to Suburban's security interest in those sums. We review summary judgment determinations under a de novo standard. McKee v. Cutter Labs., Inc., 866 F.2d 219, 220 (6th Cir.1989).
 
 1. Background
 
 23
 A security interest "means an interest in personal property or fixtures which secures payment or performance of an obligation." Mich.Comp.Laws Ann. § 440.1201(37) (West 1994). The definition explicitly includes "any interest of a buyer of accounts or chattel paper which is subject to article 9 [of the Michigan Uniform Commercial Code]." Id. Chattel paper is defined as "a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods." Id. at § 440.9105(1)(b). Property subject to a security interest, including accounts and chattel paper that have been sold, is referred to as collateral. Id. at § 440.9105(c).
 
 
 24
 A security interest in collateral becomes enforceable against the debtor or third parties when it "attaches." Id. at § 440.9203(2). For attachment to occur, the following events must take place:
 
 
 25
 (a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ... and
 
 
 26
 (b) Value has been given; and
 
 
 27
 (c) The debtor has rights in the collateral.
 
 
 28
 Id. at § 440.9203(1)(a)-(c).
 
 
 29
 Once a security interest attaches, a creditor may perfect its interest in the collateral. See id. at § 440.9303(1) ("security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken"). A security interest in chattel paper may be perfected by filing, see id. at § 440.9304, or by the secured party's taking possession of the collateral. See id. at § 440.9305. Failure to perfect a security interest can result in the subordination of a creditor's right in the collateral to the rights of other creditors. See id. at § 440.9301.
 
 
 30
 2. The Nature of Comerica's Security Interest in Schedule 13 Collateral
 
 
 31
 Under these standards, therefore, we consider whether Comerica had a superior security interest in the Schedule 13 lease payments. Comerica contends that its security interest in the Schedule 13 collateral attached and was perfected prior to Suburban's interest, and therefore Comerica's security interest was superior to Suburban's security interest for purposes of Comerica's conversion claim. Because attachment is a prerequisite to perfection, see id. at § 440.9303(1), as a threshold matter we consider whether Comerica's security interest in the Schedule 13 collateral attached.
 
 
 32
 In support of this argument, Comerica relies on its possession of the collateral in the form of chattel paper in conformance with Mich.Comp.Laws Ann. § 440.9203(1)(a). Plaintiff's proof in this regard, however, is incomplete. The only copy of the Schedule 13 equipment lease that plaintiff has produced lacks Exhibit A, which purportedly described the items to be leased. Nor does plaintiff offer evidence that it possessed the exhibit at an earlier time. Because plaintiff's version of Schedule 13 is not a lease of "specific goods," see id. at § 440.9105(1)(b), the document cannot constitute chattel paper. Therefore plaintiff did not possess the collateral for purposes of § 440.9203(1)(a).
 
 
 33
 Alternatively, plaintiff relies on the September 30, 1988, security agreement as a basis for attachment. That agreement, however, merely references the Master Lease Agreement. The Master Lease Agreement, as its name suggests, is not a lease of "specific goods," but merely evidences the parties' intent to engage in specific leases or "schedules." Also, although the security agreement refers to an attached Exhibit A, plaintiff has failed to produce any such exhibit. Thus, the security agreement fails to "contain a description of the collateral" as required under § 440.9203(1)(a), and attachment has not occurred in this manner either.[7]
 
 
 34
 In contrast, it is undisputed that Suburban's security interest in the Schedule 13 collateral attached. Moreover, Suburban perfected its interest by filing and possessing the chattel paper. See id. at §§ 440.9304-05 (security interest in chattel paper may be perfected by filing or possession). Because we determine that Comerica's security interest did not attach, its security interest could not be perfected, and therefore Comerica did not have a perfected security interest superior to Suburban's security interest for purposes of asserting a claim of conversion.
 
 
 35
 C. Plaintiff's Fraudulent Conveyance Claims Against Defendants
 
 
 36
 Plaintiff alleges that the district court erred in granting summary judgment to defendants on plaintiff's fraudulent conveyance claim. In that claim, plaintiff alleged that Computer Leasco's transfer of security interests in the Schedule 13 and Schedule 14 equipment leases and lease payments to Suburban and Columbia must be set aside as fraudulent conveyances under Michigan's Uniform Fraudulent Conveyance Act, Mich.Comp.Laws Ann. §§ 566.11-.551 (West 1989) (the Act).
 
 
 37
 That Act provides, in pertinent part, as follows:
 
 
 38
 Every conveyance made and every obligation incurred with actual intent ... to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.
 
 
 39
 Id. at § 566.17. As a remedy, the Act authorizes a creditor whose claim has matured to "[h]ave the conveyance set aside." See id. at § 566.19(1)(a). In this case, Comerica has shown that the president of Computer Leasco, Ferris Haddad, fraudulently double-pledged the collateral under Schedules 13 and 14.
 
 
 40
 In defending against plaintiff's claim, however, defendants rely on an exception contained in § 566.19 for good faith purchasers: upon a showing of fraudulent conveyance, the conveyance may be set aside "as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase." Id. at § 566.19(1) (emphasis added).
 
 
 41
 Comerica contends that this exception does not apply because defendants had constructive knowledge of Comerica's security interests in the pledged collateral. Constructive knowledge is imputed when "one by exercise of reasonable care would have known a fact...." Black's Law Dictionary 314 (6th ed. 1990). Comerica argues that Suburban and Columbia should have conducted a UCC search for financing statements at the time the security agreements were executed on their prospective loans. Such a search, Comerica alleges, would have revealed Comerica's earlier filed financing statements, describing its security interest in the Schedule 13 and 14 leases. The district court, although recognizing that constructive knowledge of fraud would be an appropriate bar to the good faith purchaser exception, determined that there was insufficient evidence to support this conclusion in this case.
 
 
 42
 The record reflects that both Columbia and Suburban took possession of the lease schedules as collateral in connection with their loans, thereby effecting both attachment and perfection of their security interests. See Mich.Comp.Laws Ann. at § 440.9203(1)(a)-(c) (security interest attaches when collateral is in possession of secured party, value has been given and debtor has rights in the collateral); id. at § 440.9305 (possession of chattel paper is a valid method of perfecting a security interest in chattel paper). In addition, defendants secured payment of the loans by having Computer Leasco assign its rights in the lease payments to them. Having possession of the collateral and the assignment of payments, defendants had no reason to suspect other competing claims existed involving the same collateral. This court has been unable to locate nor has Comerica offered any authority under Michigan law to suggest that under these circumstances a lender exercising "reasonable care" had a duty to look for other security interests claimed in the same collateral. Therefore, we conclude that plaintiff's constructive knowledge argument must fail.
 
 
 43
 Alternatively, Comerica argues that Suburban had actual knowledge of Comerica's security interest in the Schedule 13 collateral. In support of this argument, Comerica relies on a July 1988 Dun & Bradstreet report, which revealed four separate financing statements filed by Comerica on December 2, 1986, December 8, 1986, January 26, 1987, and March 3, 1987, regarding Computer Leasco's leased computer equipment. First, the Dun & Bradstreet report was not part of the record before the district court at the time the motions were decided. Second, even if it had been part of the record, and assuming for the sake of argument Comerica's security interest in the Schedule 13 collateral had attached, the report still could not have revealed plaintiff's interest in the Schedule 13 collateral, which would have arisen after the date of the report, pursuant to the September 30, 1988, security agreement. Finally, even if the report raised concerns for Suburban, Suburban took appropriate steps under Michigan's UCC to perfect its security interest in the Schedule 13 collateral by possessing the chattel paper. See Mich.Comp.Laws Ann. at § 440.9305. Therefore plaintiff's actual knowledge argument regarding Suburban must also fail.
 
 
 44
 With respect to Columbia, Comerica contends that additional discovery should be allowed to determine if Columbia had actual knowledge of Comerica's security interest. In particular, Comerica alleges that:
 
 
 45
 Columbia simply refused to answer discovery requests aimed at this knowledge and at the steps Columbia, as a prudent or not so prudent lender, took before it made its loan on the Schedule 14 collateral. Columbia's assertion that it did nothing to check for filings must be tested to determine if Columbia had actual knowledge similar to Suburban's. Until that knowledge is tested, Columbia also does not deserve innocent purchaser status.
 
 
 46
 Plaintiff's br. at 45. Comerica fails to point out, however, that these discovery requests were made after the parties had already filed dispositive motions in the case. The Federal Rules of Civil Procedure expressly address the procedure available when additional discovery is needed for responding to a dispositive motion. Fed.R.Civ.P. 56(f) provides:
 
 
 47
 Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 
 
 48
 Comerica did not follow these procedures. Instead, it filed an opposition to Columbia's cross-motion for summary judgment and separately filed discovery requests. Under these circumstances, plaintiff's claim for further discovery has been waived.
 
 D. Plaintiff's Unjust Enrichment Claims
 
 49
 Comerica further claims that Suburban and Columbia were unjustly enriched by the amount of loan payments not paid to Comerica. Unjust enrichment may be shown by (1) receipt of a benefit by the defendant from the plaintiff and (2) which benefit it is inequitable for the defendant to retain. Dumas v. Auto Club Ins. Ass'n, 473 N.W.2d 653, 663 (Mich.1991). This theory of recovery is employed by courts with caution, and is not permitted when contracts implied in fact must be established, or to substitute one promisor for another. Kammer Asphalt Paving Co. v. East China Township Schs., 504 N.W.2d 635, 640 (Mich.1993).
 
 
 50
 We first consider Comerica's claim against Suburban and Suburban's receipt of lease payments under Schedule 13. As determined earlier, Comerica did not have an enforceable security interest in this collateral. Therefore, Suburban did not take assignment of these payments as a benefit from Comerica.
 
 
 51
 Next, regarding Comerica's unjust enrichment claim against Columbia, assuming Comerica had an enforceable security interest in the Schedule 14 collateral, we nevertheless conclude that this claim is also unavailing. First, Comerica has failed to establish that Columbia received any "benefit" from Comerica. The record reflects that Columbia loaned Computer Leasco $1.87 million in exchange for a promissory note, which was repaid in full. Comerica does not allege that Columbia was paid more than what was due. Unlike the cases cited by Comerica, no benefit arose from plaintiff that was inappropriately or illegally transferred to defendant. Cf., e.g., Hayes-Albion v. Kuberski, 364 N.W.2d 609 (Mich.1984) (injunction granted in favor of former employer against former employee prohibiting employee from divulging trade secrets). Second, no inequity has been shown by Columbia's retention of the amounts it was owed. To allow Comerica to recover against Columbia would be to substitute one promisor, in this case Computer Leasco, with another, Columbia, an impermissible result under unjust enrichment law. See Kammer Asphalt, 364 N.W.2d at 640.
 
 
 52
 AFFIRMED.
 
 
 
 [1]
 Computer Leasco has filed for bankruptcy and is not a party to this action
 
 
 [2]
 The loans were given by Manufacturers Bank, N.A. That bank later merged with Comerica and Comerica is the successor in interest on the loans
 
 
 [3]
 The security agreement granted a security interest in the Master Lease Agreement and
 the inventory, equipment, property and goods relating to the Leases described as follows and/or as set forth in any schedule submitted with or annexed hereto: See attached Exhibit A and all proceeds of any of the foregoing (all of which is herein collectively called the "Collateral").
 (App. at 904.)
 
 
 [4]
 These twelve pages do not appear to have been properly offered in the record as Comerica merely attached them without a supporting affidavit to its opposition to Suburban's motion for summary judgment. See Fed.R.Civ.P. 56(e)
 
 
 [5]
 The court treated the motion as a motion for summary judgment since its content went beyond the pleadings
 
 
 [6]
 Suburban continued to receive payments within three years of plaintiff's cause of action. Therefore no statute of limitations defense is available
 
 
 [7]
 Plaintiff argued additionally that the financing statement filed with the Secretary of State in Michigan did describe the Schedule 13 lease equipment by attaching equipment invoices. A financing statement, however, does not create a security interest in property not covered by the security agreement. See Mich.Comp.Laws Ann. at § 440.9203 (security interest is not enforceable unless collateral is in possession of secured party or debtor has signed security agreement containing a description of the collateral). Moreover, there is nothing in the security agreement as evidenced linking it with the items listed in the invoices attached to the financing statement