**In the Matter of PAL NISSAN, INC., a Michigan corporation, Debtor-in-Possession.**

**TRANSAMERICA AUTOMOTIVE FINANCE CORPORATION, a Delaware corporation, Plaintiff,**

**v.**

**Randy ARTIBEE, Janice Artibee, Clarence R. Brisson, Alka P. Dhadphale, Steven M. Foulks, Kathleen G. Foulks, Jody Schutte, Gerald W. Van Buren, Linda M. Van Buren, Martin E. Warner, and Rae B. Warner, Jointly and Severally, Defendants.**

**Bankruptcy No. GM 89–00150. Adversary No. 89–0028.**

United States Bankruptcy Court, W.D. Michigan.

April 29, 1991.

---

Gary H. Cunningham, Southfield, Mich., for plaintiff Transamerica Automotive Finance Corp.

James B. Steward, Ishpeming, Mich., for defendants Clarence R. Brisson, Alka P. Dhadphale, Steven M. Foulks, Kathleen G. Foulks, Martin E. Warner, and Rae B. Warner.

## OPINION RE JURISDICTION

JAMES D. GREGG, Bankruptcy Judge.

### ISSUE

Once again, this court must visit the greyness of the statutory framework of

bankruptcy jurisdiction. The issue before the court is whether this adversary proceeding is a core proceeding, a noncore related proceeding, or a noncore, nonrelated proceeding with respect to the causes of action stated in the complaint.[1]

## PROCEDURAL BACKGROUND

Pal Nissan, Inc., the Debtor, filed a voluntary chapter 11 case on June 20, 1989. This adversary proceeding was instituted by Transamerica Automotive Finance Corp. ("Plaintiff") against the various principals, directors, or shareholders of the Debtor ("Defendants") on July 25, 1989. The Plaintiff seeks damages in the amount of $531,706.00 against the Defendants for their alleged failure to remit the proceeds from sales of inventory. The Plaintiff asserts these "out of trust" sales conducted by the Debtor, by and through the Defendants, have caused a substantial prepetition diminution of the Plaintiff's collateral which secured repayment of the Debtor's obligation to it.

The Plaintiff's complaint is comprised of three separate counts. Count I is designated "Judgment Against Shareholders", Count II is designated "Judgment Against Schutte", and Count III is designated "Request to Determine Debt to be Non–Dischargeable". The Plaintiff asserts that Counts I and II are noncore, related proceedings and the court has jurisdiction under 28 U.S.C. §§ 1334 and 157. The Plaintiff asserts that Count III is a core proceeding under 28 U.S.C. § 157(b)(2).

The Defendants filed timely answers which assert that no jurisdiction exists regarding any of the counts. The Defendants seek a dismissal of the adversary proceeding. The Defendants also seek their costs and reasonable attorneys' fees as Rule 11 sanctions against the Plaintiff for filing an allegedly unfounded or frivolous cause of action.

A pretrial conference was held in Marquette, Michigan on November 29, 1989. At pretrial, the court determined not to consider any of the substantive issues presented until the jurisdictional question was resolved. The parties represented by counsel were required to brief the jurisdictional issues. The Plaintiff submitted its brief on January 19, 1990. The individual Defendants submitted their brief on February 13, 1990. The Plaintiff submitted a supplemental memorandum of law on February 28, 1990. Oral argument was heard at a hearing conducted in Marquette, Michigan on February 28, 1990 after which the court took the jurisdictional issues under advisement.

After considering the legal briefs submitted by counsel, and the court having conducted independent research, it appeared that numerous preliminary factual matters existed that might have an effect on the court's determination of the jurisdictional issues. The court issued an order on June 19, 1990 which scheduled a supplemental hearing regarding unresolved factual matters. The order required opposing counsel to be prepared to address specified factual questions which might be relevant to the jurisdictional issues. The supplemental hearing was scheduled for July 20, 1990 and was subsequently adjourned without date in accordance with requests of opposing counsel.

The court subsequently issued another order which rescheduled the hearing for

---

1. Although this judge is without any statistical information, it appears that jurisdictional issues are being raised with much greater frequency thus requiring a larger amount of judicial time to be spent on preliminary jurisdictional issues as contrasted to substantive issues of law. In this judge's opinion, the current Bankruptcy Code has become very similar to the old Bankruptcy Act with its summary-plenary jurisdictional distinction. When preliminary jurisdictional issues are raised, undue delay in determining substantive issues often results at the trial court level. Appellate courts are not im- mune from grappling with complicated jurisdictional issues under the current statutory framework. *See, e.g., In re Wolverine Radio Co., infra.* This judge estimates that thousands of hours of judicial time are spent each year considering bankruptcy jurisdictional issues. Further, it is not unreasonable to conclude that parties in interest spend hundreds of thousands of dollars in attorneys' fees to litigate jurisdiction under the current statutory framework. Hopefully Congress will promulgate corrective legislation in the future.

February 8, 1991 in Marquette, Michigan. That hearing was conducted, at which time, by stipulation of both parties, only counsel for the Defendants appeared and presented written stipulated responses to the court's factual questions.[2] The parties have agreed the written factual representations by counsel would be binding only for purposes of the court's determination of the jurisdictional issues.

## FINDINGS

The court makes the following factual findings for purposes of determining jurisdictional issues only.

In Count I of the Plaintiff's Complaint, a judgment is sought against the Defendant stockholders based on allegations that the Plaintiff was not paid pursuant to the terms of its security agreement for certain sales of the Debtor's inventory. The Plaintiff claims that individual stockholders are liable to it based upon the tort of conversion as a result of sales of inventory "out of trust" notwithstanding that Defendants had no contractual relationship with the Plaintiff or its predecessor. The Plaintiff further seeks to recover interest, costs and attorneys' fees from the Defendants pursuant to the terms of the security agreement even though the Defendants were not parties to that agreement. In Count II, the allegations are essentially the same with respect to another individual Defendant.

In Count III, Plaintiff requests this court to determine that the asserted liability of the Defendants to the Plaintiff will be nondischargeable in the event that one, or more, of the Defendants file a subsequent bankruptcy case. The court understands Count III to be in the nature of a declaratory judgment action. None of the Defendants named in the adversary proceeding are currently debtors under any bankruptcy case now pending before this or any other bankruptcy court.

The Plaintiff holds an allowed claim, as of the filing date of this bankruptcy case, in the amount of $1,537,439.08. This allowed claim may now be less due to unspecified payments made by the Debtor, the estate, or the buyer of the estate's assets, to the Plaintiff. The Plaintiff expects to receive an approximate amount of $500,000 at the closing of the court-approved sale of the estate's assets to the buyer. After closing of the sale, the Plaintiff expects it will hold a deficiency claim in an approximate amount of $350,000. The deficiency claim may be increased due to asserted environmental cleanup costs incurred or the determination of a cause of action by the buyer which requests that the purchase price for the assets be reduced by $175,000. The effect of either of these contingencies would only increase the amount of the Plaintiff's ultimate deficiency claim. Under any possible circumstances, the Plaintiff will hold a sizeable deficiency claim against the Debtor's estate.

Issues exist whether other creditors may hold a prior perfected security interest in the estate's assets which may affect the Plaintiff's allowed secured claim. It appears that Nissan Motors Corp. does not hold a purchase money security interest in the automotive parts of the Debtor. However, all debts due and owing by the Debtor to Nissan Motors must be satisfied as a condition precedent to the transfer of the franchise agreement to the buyer of the estate's assets. Any required payment of obligations by the buyer to Nissan may result in a corresponding reduction to the purchase price for the assets.

Honore Artibee now holds an allowed claim in an approximate amount of $730,000. Based upon the current record, but without any court determination, it appears that Honore Artibee holds a subordinate security interest and mortgage to that now held by the Plaintiff. Based upon the expected distribution of cash proceeds from

---

2. On February 7, 1991, the Plaintiff filed a Response of Transamerica Automotive Finance Corporation to Second Scheduling Order. On February 8, 1991, certain Defendants filed a Response of Defendants Brisson, Dhadphale, Foulks and Warner to Second Scheduling Order. Defendants Artibee and Van Buren neither filed responses nor appeared at the scheduled hearing on February 8, 1991.

the sale of the estate's assets, Honore Artibee will not be entitled to receive any distribution of the sale proceeds. Therefore, as matters now stand, it appears Honore Artibee will hold an unsecured claim in the amount of approximately $730,000. 11 U.S.C. § 506(a).

Another creditor, Republic Automotive, may have a security interest with regard to some of the estate's assets. However, given the current record, Republic Automotive is very likely subordinate to the Plaintiff's secured position. Again, it is extremely unlikely that Republic Automotive will be satisfied from the proceeds of the sale; it will very likely hold an unsecured deficiency claim.

It is possible the debtor-in-possession may assert causes of action against nondebtor parties to recover preferential transfers. If and when any preferential transfers are recovered, additional proceeds will be available for distribution to creditors, in accordance with their respective priorities. It is now impossible to determine what amounts, if any, may be recovered by the estate for the benefit of creditors.

## DISCUSSION

*Does Jurisdiction Exist Regarding the Plaintiff's Causes of Action Against the Stockholders Who Are Alleged to Have Converted Property Subject to the Plaintiff's Security Interest?*

When considering any jurisdictional issue, this court must first review cases decided by the Sixth Circuit Court of Appeals. The court has therefore again reviewed Sixth Circuit jurisdictional caselaw. *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254 (6th Cir.1983); *Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626 (6th Cir.1986); and *DuVoisin v. Foster (In re Southern Indus. Banking Corp.)*, 809 F.2d 329 (6th Cir.1987).

In *White Motor*, the Sixth Circuit upheld the constitutional validity of the so-called "emergency rule" which permitted referral of bankruptcy cases and proceedings from district courts to bankruptcy courts. *White Motor*, 704 F.2d at 261. The rule was necessitated by the decision of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (which invalidated the delegation of Article III judicial power to bankruptcy courts pursuant to 28 U.S.C. § 1471). After this decision, a model interim rule was adopted by the Judicial Conference of the United States and the Judicial Councils of the eleven Circuits. The various district courts were directed to adopt the interim rule. *White Motor*, 704 F.2d at 262. The framework of the interim rule served as the basis of a key portion of the current statutory framework promulgated by Congress now set forth in 28 U.S.C. § 157. Because the Sixth Circuit determined the interim rule was constitutionally valid, *a fortiori* the current statute also passes constitutional muster.[3] To the extent that the Defendants may impliedly assert that the now-existing statutory framework is an unconstitutional delegation of Article III judicial power to Article I bankruptcy judges, this court now rejects any such argument.

In *In re Southern Industrial Banking Corp.*, the defendant, after admitting to the bankruptcy court's jurisdiction in his answer and receiving an unfavorable judgment from the bankruptcy court, raised jurisdictional issues on appeal. The defendant argued the bankruptcy court was without power to hear or render a final judgment regarding the preferential transfer and setoff issues presented. Although the Sixth Circuit characterized the adversary proceeding as a noncore related proceeding, it stated: "[a] related proceeding with consent of all parties functionally has the same effect as a core proceeding, permitting the bankruptcy court to entertain

---

**3.** This court notes that some commentators have again raised the specter of the possible constitutional infirmity of the current statutory framework based upon language contained in *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). See, e.g., *Norton Bankruptcy Law Advisor*, August 1989 at pp. 3–4 ("the decision implied that an equitable action not involving 'public rights' must be heard by an Article III, not by an Article I Bankruptcy Court."). Time will tell whether such concerns are prescient or not.

jurisdiction over the matter and to enter a final judgment, order or decree." *In re Southern Industrial Banking Corp.*, 809 F.2d at 331. Express consent to a bankruptcy court entering a final judgment is not always required. "Even if express consent has not been proven, we agree with recent cases in the bankruptcy courts that have supported the notion that the absence of a timely objection to the bankruptcy court's jurisdiction constitutes implied consent to the resolution of the controversy." *In re Southern Industrial Banking Corp.*, 809 F.2d at 331.

 In this adversary proceeding, some Defendants have timely objected to jurisdiction. However, other Defendants have not objected to jurisdiction of this court. With regard to those Defendants who have not timely objected to jurisdiction, they have impliedly consented to this court entering a final judgment subject to appellate review. 28 U.S.C. § 157(c)(2); *In re Southern Industrial Banking Corp.*, 809 F.2d at 331. However, all Defendants in the adversary proceeding have not impliedly or explicitly consented to this court entering a final judgment. For the bankruptcy court to enter a final judgment, *all* parties must consent. 28 U.S.C. § 157(c)(2). Therefore, absent consent by all Defendants, and notwithstanding that the substantive issues raised may be affected or governed by state law, it is this court's duty to initially determine whether the adversary proceeding is a core proceeding, a noncore related proceeding, or a noncore, nonrelated proceeding. 28 U.S.C. § 157(b)(3).

 In *In re Salem Mortgage Co.*, the Attorney General for the State of Michigan sued the debtors and a large number of nondebtor, non-estate defendants. After a complicated settlement was achieved, a pro-posed consent judgment was submitted to the bankruptcy court for approval. Over objection, and after a hearing, the bankruptcy court approved the settlement and recommended to the district court that the consent judgment be entered. The district court, for the first time, raised the issue of whether it had subject matter jurisdiction. The district court then determined it lacked jurisdiction to enter the consent order.

On appeal, after reviewing the applicable statute and relevant legislative history, the Sixth Circuit noted that it had "no doubt that Congress intended to grant the district courts broad jurisdiction in bankruptcy cases." [4] *In re Salem Mortgage Co.*, 783 F.2d at 634. The Sixth Circuit also stated its standard to determine whether jurisdiction existed:

> Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be "related to" a particular bankruptcy case. Some courts would find jurisdiction "only where the action clearly involved property of the estate ... or where a determination of the controversy is required for the proper administration or reorganization of the estate.... *In re General Oil Distributors, Inc.*, 21 B.R. 888, 892 n. 13. (Bankr.E.D.N.Y.1982) (citations omitted). Another test finds jurisdiction "whenever 'the outcome of the proceeding could conceivably have *any effect upon the estate* being administered in bankruptcy.'" *Id.* (citing *Mazur v. U.S. Air Duct Corp.*, 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981) (emphasis in original)). Although situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the

---

**4.** Under the current jurisdictional framework, the broad bankruptcy jurisdiction of the district courts is also held by the bankruptcy courts pursuant to the permissive referral contained in the statute. 28 U.S.C. § 157(a) and (b)(1). In accordance with these statutory subsections, the United States District Court for the Western District of Michigan has entered a so-called general referral order. United States District Court for the Western District of Michigan Local Rule

**65.** Constitutional safeguards are provided to parties when a noncore related proceeding is heard by the Article I bankruptcy court. In such instances, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court; if a specific objection is timely filed, a district judge then reviews the recommendations of the bankruptcy court *de novo*. 28 U.S.C. § 157(c)(1).

statute more closely reflects the congressional intent in adopting the new bankruptcy laws.

*In re Salem Mortgage Co.*, 783 F.2d at 634; *accord, Robinson v. Michigan Consol. Gas. Co. Inc.*, 918 F.2d 579, 583–84 (6th Cir.1990). In this adversary proceeding, it must be determined whether the outcome of the proceeding could have any conceivable effect on the administration of the bankruptcy estate or, to the contrary, whether the adversary is so extremely tenuous that jurisdiction does not exist.

This court has previously written about the problems in determining a bankruptcy court's jurisdiction under the current statutory framework. *Spence v. Pontack (In the Matter of Tvorik)*, 83 B.R. 450 (Bankr. W.D.Mich.1988). In that case, the relative degrees of jurisdictional "greyness" were recognized. *Tvorik*, 83 B.R. at 454–55. After considering the jurisdictional standards as set forth in *White Motor* and *Salem Mortgage*, this court also acknowledged a corollary principle that when a proceeding has a vague or incidental relation to the bankruptcy case, or its impact upon the case would be speculative, indirect or incidental, the adversary proceeding is a noncore, nonrelated proceeding. *Citizens Nat'l Bank of Bowling Green v. Schaberg Lumber Co. (In re Bowling Green Truss, Inc.)*, 53 B.R. 391, 394 (Bankr.W.D.Ky.1985). Applying the jurisdictional guidelines, this court determined that a cause of action, by a nondebtor guarantor against another nondebtor seeking to void a guaranty and a mortgage which secured the guaranty, was a noncore, nonrelated matter. No subject matter jurisdiction existed because it was inconceivable that voiding the guaranty and the mortgage would have any effect upon the administration of the bankruptcy estate. *Tvorik*, 83 B.R. at 456.

Not surprisingly, the Plaintiff argues that if it obtains and collects a judgment in the adversary proceeding, there will be an effect upon the estate. Also as may be expected, the Defendants argue that resolution of the adversary proceeding will, at best, have a speculative, indirect or incidental effect upon the estate. The Defendants correctly state that the adversary proceeding only involves nondebtor parties. They assert that the complaint does not seek damages for the benefit of the estate; any damages that might ultimately be recovered will be solely for the benefit of the Plaintiff. Finally, the Defendants assert that they have not contractually guaranteed payment of the Debtor's obligation to the Plaintiff; the asserted liability will only arise if the Plaintiff can demonstrate that one or more of the Defendants wrongfully converted collateral which was subject to the Plaintiff's security interest. The gist of the Defendants' argument is that the merits of the Plaintiff's cause of action are totally speculative and incidental to the bankruptcy case.

Based upon the current posture of this bankruptcy case, the Plaintiff holds an unsecured deficiency claim in the amount of at least $350,000. According to the Plaintiff's allegations, the deficiency claim arose, in whole or in part, as a result of the Defendants' wrongful conversion of its collateral. If the Plaintiff prevails in this adversary proceeding, and collects under any judgment awarded, the Plaintiff's deficiency claim will be correspondingly reduced, or perhaps entirely satisfied. After such reduction or satisfaction of the Plaintiff's allowed claim, other creditors may become entitled to receive a greater pro-rata distribution from the Debtor's estate.

■ Whether an adversary proceeding is speculative does not depend upon the parties' respective arguments regarding the ultimate merits of the litigation. All litigation is speculative. Rather, the focus must be upon whether the outcome of the litigation may affect the administration of the bankruptcy estate. Notwithstanding Defendants' assertion that unconditional liability is required for an adversary proceeding to be related to a bankruptcy case, the jurisdictional "statute does not require a finding of definite liability of the estate" or, in this court's view, a nondebtor party. *In re Salem Mortgage Co.*, 783 F.2d at 635.

This court holds that subject matter jurisdiction exists respecting the Plaintiff's causes of action against the Defendants

based upon the asserted conversion of the Plaintiff's collateral. This holding is consonant with Congress' intent that the bankruptcy courts be given broad jurisdiction under the bankruptcy laws. *In re Salem Mortgage Co.*, 783 F.2d at 635.

■ In Defendants' memoranda of law, it is requested that the automatic referral of the adversary proceeding to the bankruptcy court be withdrawn. Such relief must be addressed by the district court after the filing of a proper pleading. The Defendants also request that this court abstain from hearing the adversary proceeding. This court notes:

> The degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain. The present posture of this case is that no decision to abstain has as yet been made and we make no comment on the appropriateness of abstention.

*In re Salem Mortgage Co.*, 783 F.2d at 635. If and when a proper motion is filed, a determination regarding permissive abstention will be made.

Finally, the Defendants have demanded that the causes of action in this adversary proceeding be tried before a jury. If necessary, the Defendants' request for a jury trial will be determined at a later time after further briefing in accordance with a subsequent scheduling order.

*Does Jurisdiction Exist Regarding the Plaintiff's Cause of Action for a Declaratory Judgment That Any Judgment Obtained Against the Defendants Will Be Nondischargeable in a Future Bankruptcy Case?*

■ The Plaintiff seeks to have any judgment subsequently awarded against the Defendants to be deemed a non-dischargeable debt in any future bankruptcy case that may be filed by one, or more, of the Defendants. 11 U.S.C. § 523(a). The Plaintiff asserts that such a declaratory action is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

The Plaintiff offers no cogent argument or reported cases to support its jurisdictional assertions. This court must first examine the statutory language of 11 U.S.C. § 523(a). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

11 U.S.C. § 523(a) states in pertinent part: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—". The Defendants correctly argue that Section 523(a) only covers instances when debts of a *debtor* shall be determined to be nondischargeable. The Bankruptcy Code defines a "debtor" to be a "person or municipality concerning which a case under this title has been commenced". 11 U.S.C. § 101(12). None of the Defendants have yet filed a bankruptcy petition. They are not "debtors" before any bankruptcy court at this time.

28 U.S.C. § 157(b) confers jurisdiction for core proceedings *under title 11.* The Plaintiff's declaratory action does not relate to the dischargeability of any debt of an existing *debtor* in any case now pending before this court. The declaratory action is not a core proceeding. This court does not have jurisdiction to determine whether a debt, if any, owed by one, or more, of the Defendants to the Plaintiff shall be nondischargeable in some different, future bankruptcy case.[5] *Cf. Michigan Employment Security Commission v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930

---

5. However, the determination of the conversion cause of action may result in *res judicata* or collateral estoppel implications in a Defendants' subsequently filed bankruptcy case. *See, e.g., Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981); *cf. Grogan v. Garner*, — U.S. —, 111

S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance of evidence standard applies in nondischargeability actions under 11 U.S.C. § 523(a); possible collateral estoppel effect to elements actually litigated recognized).

F.2d 1132 (6th Cir.1991) (although bankruptcy court had jurisdiction under 28 U.S.C. § 1334 over the MESC, 11 U.S.C. § 505(a) does not empower the bankruptcy court to modify or prohibit the MESC's transfer of the debtor's experience rating to the buyer of the debtor's assets).

*Defendants' Request for Sanctions.*

Bankruptcy Rule 9011 allows the court to impose various sanctions including fines, costs, and attorneys' fees if the court determines a proceeding was improperly brought before it. The court finds, based upon the current record, that this adversary proceeding appears to be well-grounded in fact, is warranted based on existing law, and is not interposed for any improper purpose such as to delay, harass, or needlessly increase the cost of litigation. B.R. 9011(a). The court therefore declines to now impose any sanctions against the Plaintiff in this adversary proceeding.

## CONCLUSION

The court holds that Counts I and II are noncore related proceedings over which it has jurisdiction. The court holds that jurisdiction does not now exist to explicitly determine any future alleged nondischargeability of asserted unliquidated liability of the nondebtor individual Defendants. Count III is therefore dismissed as now being outside of the jurisdiction of this bankruptcy court. No sanctions are imposed against the Plaintiff at this time. An order shall be entered accordingly.